**HOFFMAN et al.**

v.

**PERRUCCI (HOFFMAN, third-party defendant).**

**No. 13172.**

United States District Court,
E. D. Pennsylvania.

Oct. 22, 1953.

See also D.C., 14 F.R.D. 474.

Freedman, Landy & Lorry, Samuel H. Landy, Philadelphia, Pa., for plaintiffs.

Arthur Littleton, John R. McConnell, J. Wesley Oler, Philadelphia, Pa., for respondents American Auto. Ins. Co., Associated Indemnity Corp. and American Associated Ins. Companies.

GANEY, District Judge.

This matter is before the court on the motion of the respondents, American Automobile Insurance Company, Associated Indemnity Corporation and American Associated Insurance Companies, to dismiss a motion which seeks, in addition to equitable relief, the issuance of citations against them. The citations request the respondents to appear and show cause why they should not be adjudged in contempt of court by reason of four advertisements which they inserted in two magazines of wide circulation and of a pamphlet which they distributed[1] relating to jury verdicts and the effect there-

1. These advertisements were published, respectively, in Life Magazine for January 26, and March 9, 1953, and in The Satur- day Evening Post for February 14, and March 28, 1953. The pamphlet was given separate general distribution.

of upon liability insurance rates and living costs generally.

The motions were filed in an action involving an ordinary automobile accident. Respondents are not parties to the action, are not insurers of any of the parties and are not in any other way connected with the action. In their motion to dismiss, respondents take the position that the advertisements and pamphlet speak for themselves, are directed against excessive verdicts only, are in no way disrespectful or contemptuous, and are within the protection of the constitutional guarantees of free speech and press. There is no controversy as to the facts. The only material disputes are on questions of law as to the legal effect of the advertisements and pamphlet, and the right of the respondents to issue them.

Each of the four full page advertisements contains a dramatic photograph, occupying more than half the page, which supplied the background or setting for the printed message in the lower portion of the page.

The picture of the first advertisement shows a guarded closed door of a jury room. The printed message underneath states, in part, as follows:

Casualty insurance companies have been losing an average of $11 on every $100 of earned automobile liability premiums. More accidents are partly responsible. So are excessive jury awards, rendered by jurors who feel they can afford to be generous with the "rich" insurance company's money. Actually, jurors who are responsible for awards in excess of what is just and reasonable are soaking *you* by raising insurance rates.

The message of the second advertisement bearing a picture of jurors taking the oath advises as follows:

But the Juror's Oath demands that jurors decide "according to * * * the evidence." Jurors sometimes forget this. Ruled by emotion rather than facts, they arrive at unfounded or excessive awards * * * verdicts occasionally even higher than requested!

These men and women may be scrupulously honest. But as jurors, they feel in their hearts that the injured person—although he may have caused the accident—is entitled to an award.

Because insurance rates depend on claim costs, these honest jurors cost millions of policyholders, including themselves, countless extra dollars in premiums every year.

A picture of a woman with a puzzled expression at a store counter paying her grocery bill provides the background for the message of the third advertisement which speaks as follows:

Yes, Mrs. Jones, you pay for liability and damage suit verdicts whether you are insured or not.

* * * * * *

Next time you serve on a jury, remember this: When you are overly generous with an insurance company's money, you help increase not only your own premiums, but also the cost of every article and service you buy.

The picture of the fourth and last advertisement depicts a father confessing to his son—a senior in law school—about his recent experience as a juror. In part the confession is as follows:

As a businessman, I knew the woman involved in the trial was legally at fault. She walked into a moving car. But she was a widow with a child to support. And I felt certain that the driver of the car was insured.

The doctor said that the widow wouldn't be able to hold down a steady job for at least a year, so we awarded her a healthy sum. After all, her child must eat.

In the bottom right hand corner of each advertisement the following notation, set off by a rectangle, appeared:

Most claims for damages are legitimate and reasonable, and are amicably settled out of court.

However, as jurors tend more and more to give excessive awards in cases that do go to court, such valuations are regarded as establishing the "going" rate for the day-to-day out-of-court claims—

all of which means increased insurance premium cost to the public.

The pamphlet first asks the question what is causing jury awards to increase and then goes on to answer the question by blaming jurors.

■ We feel that the out-of-court publication of these advertisements and the distribution of the pamphlet do not interfere with the ordinary administration of justice in the action before this court. There is not present that extremely high degree of imminence of the substantive evil[2] which would justify punishment of the publications.[3] See Bridges v. State of California, 1941, 314 U.S. 252, 263, 62 S.Ct. 190, 86 L.Ed. 192. This point of view is further emphasized when consideration is given to the fact that the impact of the advertisements is directed against no particular target— no particular law suit—but rather aimed at influencing the public mind generally. This pattern of public expression is not within the ban as emphasized in Pennekamp v. State of Florida, 328 U.S. 331, 365–366, 66 S.Ct. 1029, 1046, 90 L.Ed. 1295, wherein Mr. Justice Frankfurter, in discussing the responsibility of the press, said:

> "* * * It should not and may not attempt to influence judges or juries before they have made up their minds on pending controversies. Such a restriction, which merely bars the operation of extraneous influence specifically directed to a concrete case, in no wise curtails the fullest discussion of public issues generally. It is not suggested that generalized discussion of a particular topic should be forbidden, or run the hazard of contempt proceedings, merely because some phases of such a general topic may be involved in a pending litigation. It is the focused attempt to influence a particular decision that may have a corroding effect on the process of justice, and it is such comment that justifies the corrective process."

Before a jury is empaneled to hear the action here involved, plaintiffs will have an opportunity to question the prospective jurors concerning the possible effect such advertisements and pamphlet may have on any award of damages which they may render. Moreover, despite the fact that for the purpose of ruling on respondents' motion to dismiss all facts well pleaded in plaintiffs' motion for citation are deemed to be true, we are not certain that those advertisements will have the effect claimed by plaintiffs on prospective jurors; they may resent being told that prior juries have been sentimental and have made excessive awards contrary to law.

■ To plaintiffs' request for injunctive relief we cannot accede. If we disregard procedural irregularities and treat plaintiffs' motion as an independent action for injunctive relief, we would be required to dismiss the complaint in the action. Section 27 of the Pennsylvania Act of June 16, 1836, P.L. 784, 17 P.S. § 2045,[4] grants plaintiffs a remedy

---

2. The substantive evil here sought to be averted has been stated by the plaintiffs to be the objective of the advertisement i.e. "to bring improper and illegal influence to bear upon prospective jurors. And that such influence upon and inducement to prospective jurors was by means of false, misleading propaganda attempting to persuade prospective jurors to believe: (a) verdicts for plaintiffs affect the pocketbook of each and every juror; (b) so called 'excessive jury awards' are responsible for increase in insurance premiums and cost of every article and service jurors buy; (c) legitimate and reasonable damage claims are settled 'out of court'; and (d) verdicts for plaintiffs are rendered by jurors contrary to the law and the evidence".

3. In a similar case in a Kansas State Court, Judge Wm. C. Kandt, with great reluctance, found the respondents not guilty of indirect contempt of court. See Hendrix v. Consolidated Van Lines, Inc., District Court, Division Number One, Wichita, Kansas, decided August 20, 1953.

4. This section provides: "If any * * * publication shall improperly tend to bias the minds of the public, or of the court, the officers, jurors, witnesses or any of

at law against respondents. It has not been alleged or demonstrated that this remedy is inadequate. We cannot say that it appears so on the face of the statute.

Accordingly, respondents' motion to dismiss plaintiffs' motion for citation or in the alternative for equitable relief will be allowed.

them, on a question pending before the court, it shall be lawful for any person who shall feel himself aggrieved thereby to proceed against the author, printer and publisher thereof, or either of them, by indictment, or he may bring an action at law against them, or either of them, and recover such damages as a jury may think fit to award."