**UNITED STATES ex rel. MAY**
v.
**AMERICAN MACHINERY CO., Inc. et al.**

No. 1090.

United States District Court
E. D. Washington, N. D.

Nov. 6, 1953.

Tonkoff, Holst & Hopp, Yakima, Wash., R. Max Etter, Spokane, Wash., Paul C. Keeton, Lewiston, Idaho, Walter M. Oros, Boise, Idaho, of counsel for relator.

H. Earl Davis, Spokane, Wash., Clausen & Gemmill, Spokane, Wash., of counsel, for defendant.

Hamblen, Gilbert & Brooke, Spokane, Wash., Paine, Lowe & Coffin, Spokane, Wash., Evans, Bayard & Frick, Philadelphia, Pa., of counsel, for respondents.

DRIVER, Chief Judge.

On March 19, 1953, Raymond May, as plaintiff, commenced, in this Court, an action for damages for personal injuries against American Machinery Company, a corporation, as defendant. After defendant had appeared in the action, and plaintiff had demanded a jury trial, but before the case had been set for trial, plaintiff May, as relator, filed herein his petition requesting that respondents be cited and punished for contempt of court. An order to show cause was issued and served upon the respondents. By their motions to dismiss, respondents question the jurisdiction of this Court and the sufficiency of the petition to support the relief requested.

Summarized, briefly, the petition recites that respondents have conspired and acted in concert to interfere with the administration of justice in this Court and in relator's action against the American Machinery Company by instructing jurors and prospective jurors in the manner and method of adjudicating facts and evidence and assessing damages in that action, and other actions, and have endeavored to influence and induce jurors to return verdicts in favor of defendants in actions brought for damages for personal injuries sustained by plaintiffs. Specifically, the petition alleges that respondents have sought to accomplish such objectives by the publication of certain articles in *The Saturday Evening Post* and the distribution and circulation thereof in the State of Washington and elsewhere. As an example of such articles, relator sets out, as an exhibit to the petition, a copy of an advertisement from *The Saturday Evening Post* of February 28, 1953.

The advertisement consists of a picture which depicts two men sitting facing each other in a well-furnished living room. The younger man appears to be talking very earnestly to the older one. Underneath the picture, in bold type, is the title: "Bill Set Me Straight On Jury Awards" and, in smaller print, the following text:

"Bill's my son, a senior in Law school. Last night I told him about my recent experience as a juror.

"As a businessman, I knew the woman involved in the trial was legally at fault. She walked into a moving car. But she was a widow with a child to support. And I felt certain that the driver of the car was insured.

"The doctor said that the widow wouldn't be able to hold down a steady job for at least a year, so we awarded her a healthy sum. After all, her child must eat.

" 'But the law,' said Bill, 'clearly states that the verdict must be based on legal liability, fault for the accident, as determined by the evidence.'

" 'The insurance company can afford to pay,' I protested.

" 'But claims,' argued Bill, 'must be paid out of premiums belonging to thousands of policyholders, including widows, too. And don't forget, when premium collections do not cover claims, everybody's insurance rates—including yours—have to go up.' "

"You know, sometimes it pays to listen * * * even to your son."
In a boxed insert, there is printed the following:

"Most claims for damages are legitimate and reasonable, and are amicably settled out of court. However, as jurors tend more and more to give excessive awards in cases that do go to court, such valuations are regarded as establishing the

'going' rate for the day-to-day out-of-court claims—all of which means increased insurance premium cost to the public.

"American-Associated Insurance Companies

American Automobile Insurance Company

Associated Indemnity Corporation Saint Louis 2, Missouri"

 In considering respondents' motions to dismiss, I not only assume that all of the allegations of relator's petition are true, but I accord to relator the benefit of every reasonable inference that can be drawn therefrom. So considered, the petition shows only that the respondents caused to be circulated and to be read by prospective jurors in this Judicial District advertisements and articles in *The Saturday Evening Post* of the character above described, which articles were intended to and, in all probability, would improperly influence the jurors in the performance of their official duties in a manner prejudicial to relator. It is my conclusion that, on such a showing, a Federal District Court can not summarily punish the respondents for contempt.

The power of this Court to punish for contempt is strictly limited by statute, Title 18, U.S.C.A. § 401, which reads as follows:

"*§ 401. Power of court*

"A court of the United States shall have power to punish by fine or imprisonment, at its discretion, such contempt of its authority, and none other, as—

"(1) Misbehavior of any person in its presence or so near thereto as to obstruct the administration of justice;

"(2) Misbehavior of any of its officers in their official transactions;

"(3) Disobedience or resistance to its lawful writ, process, order, rule, decree, or command."

The only category of the statute which could possibly apply to the instant case is number (1), namely, misbehavior of any person in the presence of the Court or so near thereto as to obstruct the administration of justice. In a case decided April 14, 1941, Nye v. United States, 313 U.S. 33, 61 S.Ct. 810, 816, 85 L.Ed. 1172, the Supreme Court construed a like statutory provision, then contained in Section 268 of the Judicial Code, Title 28 U.S.C.A. § 268. The Court held that "so near thereto" means actual, geographical, physical nearness to the court; and that acts which reasonably tend to obstruct the administration of justice, but are committed at a substantial distance from the court, do not come within the statute. There can be no doubt as to what the court held in view of the fact that it expressly overruled Toledo Newspaper Co. v. United States, 247 U.S. 402, 38 S.Ct. 560, 62 L.Ed. 1186, a case, factually, quite similar to the present one, in which the Supreme Court sanctioned summary punishment for contempt consisting of the publication of newspaper articles reasonably calculated to affect pending litigation.[1]

1. See also the following quotations from the majority opinion in Nye v. United States, supra: "Mindful of that history, we come to the construction of § 268 of the Judicial Code in light of the specific facts of this case. The question is whether the words 'so near thereto' have a geographical or a causal connotation. Read in their context and in the light of their ordinary meaning, we conclude that they are to be construed as geographical terms. * * * It is not sufficient that the misbehavior charged has some direct relation to the work of the court. 'Near' in this context, juxtaposed to 'presence', suggests physical proximity not relevancy. In fact, if the words 'so near thereto' are not read in the geographical sense, they come close, as the government admits, to being surplusage. * * * We may concede that there was an obstruction in the administration of justice, as evidenced by the long delay and large expense which the reprehensible conduct of petitioners entailed. And it would follow that under the 'reasonable tendency' rule of Toledo Newspaper Co. v. United States, supra [247 U.S.

In the present case, no alleged acts of respondents' took place in the presence of the court, or physically so near thereto as to interfere with its functions. A Court, as the term is used in the statute, means a tribunal, authorized to administer justice, with all its essential component parts, which is convened at a time and place appointed by law.[2] Prospective jurors who have not as yet been summoned to appear for service at the place where the court is held are not component parts of the court; and distribution to them of the magazine article, described in relator's petition, could not be regarded as misbehavior in the presence of the court, or so near thereto as to interfere, in a physical sense, with the court's functions.

Respondents also earnestly contend that their alleged activities constitute a proper and legitimate exercise of the freedom of the press, safeguarded by the First Amendment to the Federal Constitution. In view of my construction of the Federal contempt statute, it is unnecessary for me to pass upon the contention, and I shall not do so, except to observe that it appears to have substantial merit. The United States District Court for the Eastern District of Pennsylvania, in an opinion filed October 22, 1953,[3] held that publication and circulation of the same Saturday Evening Post advertisement, set out above, and other similar advertisements, could not be regarded as contemptuous, for the reason that "there is not present that extremely high degree of imminence of the substantive evil which would justify punishment of the publications."[4]

In the prayer of his petition, relator asks that respondents be required to show cause why they should not be restrained and enjoined from publishing and circulating the articles of which he complains. In the posture of the instant case, however, the prayer for injunctive relief does not enlarge the powers of this Court. The respondents are not parties to the original action, and no summons has been served upon them. They have been brought into court by show cause order to determine whether they should be summarily punished for contempt. They are not in court for any other purpose.

The motions to dismiss will be granted.

---

402, 38 S.Ct. 560, 62 L.Ed. 1186], the court below did not err in affirming the judgment of conviction. But for the reasons stated that decision must be overruled. The fact that in purpose and effect there was an obstruction in the administration of justice did not bring the condemned conduct within the vicinity of the court in any normal meaning of the term. It was not misbehavior in the vicinity of the court disrupting to quiet and order or actually interrupting the court in the conduct of its business." 313

U.S. at pages 48, 49, 52, 61 S.Ct. at page 816.

2. 10 Words and Phrases, Court of Justice, pages 235–237.

3. Hoffman v. Perrucci, 117 F.Supp. 38.

4. See also Bridges v. State of California, 314 U.S. 252, 62 S.Ct. 190, 86 L. Ed. 192; Pennekamp v. State of Florida, 328 U.S. 331, 66 S.Ct. 1029, 90 L. Ed. 1295; Craig v. Harney, 331 U.S. 367, 67 S.Ct. 1249, 91 L.Ed. 1546.