Ted Willlam FARMER, Who Sues by His
Mother and next Friend, Elizabeth
Farmer, Appellant,

v.

George W. PEARL, Sr., and George W.
Pearl, Jr., Appellees.

Court of Appeals of Kentucky.

May 12, 1967.

Raymond C. Stephenson, Henry V. B. Denzer, Louisville, for appellant.

James M. Graves and William P. Swain, Boehl, Stopher, Graves & Deindoerfer, Louisville, for appellees.

JAMES C. CARTER, Jr., Special Commissioner.

This is an action for injuries sustained by the appellant, a six-year-old child, when he darted from in front of a parked vehicle and collided with the side of an automobile driven by the appellee. The lower court entered judgment upon a jury verdict for the appellee and this appeal is prosecuted from that judgment.

The accident happened in front of appellant's home on Kennedy Road in Jefferson County, Kentucky. Kennedy Road is a rather narrow residential street one block long and extending from east to west. The west end enters Dixie Highway in the form of a "T" intersection. Houses line both sides of the street which is about 20 to 22 feet wide. There are no sidewalks. Kennedy Road can be entered at the southeast end from Loney Lane, which runs north and south.

On Sunday morning, March 17, 1963, the date of the accident, the appellee was driving a 1962 Ford owned by his father. Other occupants of the car were his mother, his brother, and his sister. They were enroute to church.

The appellee proceeded down Loney Lane and made a left turn onto Kennedy. As he entered Kennedy, the appellee observed some children playing softball in the street about a quarter of the way up the block. His speed at that time was about 20 miles per hour. The kids waved and walked to the shoulder of the road. Appellee's estimated speed as he passed these children was 15 to 20 miles per hour.

The appellant's home is located about 25 yards east of Dixie Highway and some 500 to 600 feet west of the area in which the children were playing ball.

In front of the appellant's home a car was parked on the south, or left, side of the street with two wheels on the shoulder and two wheels on the pavement. It was headed in a westerly direction, i.e., the same direction in which the appellee was traveling.

As appellee passed this parked automobile he was traveling on the right-hand side of the street and was beginning to slow down since he was approaching the Dixie Highway intersection. His speed was 15 miles per hour at the most.

Suddenly the appellant, a small child six years of age, ran from in front of the parked car and into the side of appellee's car. The child darted out from no more than one or two feet in front of the parked car and the appellee testified that since his view of the child was totally obscured by the parked car, he did not see him until the moment of impact. The child struck the left side of the car near the front door hinge, about six feet from the front of the automobile.

The appellee applied his brakes immediately and came to a stop on the right-hand side of the road within 15 to 20 feet.

In addition to the appellee, witnesses to the accident included his mother, Mrs. George W. Pearl, Sr., his brother James and his sister Agatha Ann. Mrs. Pearl, who was riding in the rear seat behind the appellee, did not see the child at any time until the instant of impact. James, who was riding in the front seat, and Agatha Ann, who was seated to his rear, both saw the child playing in the front yard some distance away, but neither saw him emerge from in front of the parked car and neither saw the impact.

There is some question raised in the briefs as to whether the appellee was entitled to a directed verdict and to a sudden appearance instruction which was not given. However, since the jury returned a verdict for the appellee it is not necessary for us to resolve these issues.

The jury was instructed that it was the duty of the appellee to maintain a proper lookout and that if he failed to do so, he was negligent. No contributory negligence instruction was given, and the jury was told that if it found the appellee negligent, it would find for the appellant. The jury found for the appellee. In other words, the jury, after hearing all the evidence, found the appellee free from negligence. The judgment entered upon that verdict should be allowed to stand.

The appellant contends that the lower court committed reversible error in instructing the jury on the definition of "ordinary care."

The appellant tendered the following ordinary care instruction:

"In these instructions the phrase 'ordinary care,' as applied to the defendant driver, means that degree of care usually exercised by an ordinarily careful and prudent person to avoid injury to a child of the size and apparent age of Teddy Farmer, under circumstances like or similar to those in this case. Negligence is the failure to exercise ordinary care."

The Court refused this instruction and instead gave the instruction set out below:

"Negligence" is the failure to exercise ordinary care. "Ordinary care," as used in these instructions, is that degree of care usually exercised by ordinarily careful, prudent persons under like or similar circumstances to those shown in this case.

■ We are aware that the tendered instruction insofar as it relates to the size and apparent age of the child has been approved by this Court in several cases. See 1 Stanley, Instructions to Juries, Sec. 109(5) 1957. However, even though such an instruction is proper, it does not necessarily follow that it is mandatory or that the refusal to give it is reversible error.

■ The size and apparent age of the child is merely one of the like or similar circumstances to be considered by the jury. The tender age of the appellant was stressed repeatedly throughout the trial, as well as in the opening and closing statements of counsel. It is not necessary to overload the instructions with reference to all the circumstances. The jury had heard the evidence and it knew what the circumstances were. It is axiomatic that a higher degree of care is required of one handling a rifle than of one handling a wooden cane, but the jury is not necessarily so instructed. The definition of ordinary care in negligence cases of this nature as "that degree of care usually exercised by ordinarily careful, prudent persons under like or similar circumstances" accurately informs the jury of the law.

We call attention to Liberty National Bank & Trust Co. v. Raines, Ky., 416 S.W. 2d 719 (this day decided), in which the same holding is made.

Appellant also contends that the trial court prejudicially limited his voir dire examination of the jury panel.

■ A trial court has wide discretion in permitting or limiting the voir dire examination of prospective jurors in civil cases. Brumfield v. Consolidated Coach Corp., 240 Ky. 1, 40 S.W.2d 356 (1931). The record in the case at bar does not show that the trial court abused its discretion and certainly does not reveal reversible error.

Rule 1804 of the Jefferson Circuit Court Civil Rules provides that the court shall conduct its own voir dire examination of the jury panel by propounding eleven enumerated questions.

■ The voir dire by the court was extensive, and it not only complied with but exceeded the requirements of Rule 1804. When appellant's counsel rose to conduct his voir dire he prefaced his remarks with the words: "As His Honor has stated * * *." The trial court, in a proper exercise of its discretion, asked counsel not to repeat what the court had already told the jury.

Next, appellant's counsel made an effort to anticipate the court's instructions, and he was properly restrained by the court.

The court then prevented counsel from asking the following question, "Have any of you read articles, periodicals, editorials, any material, pertaining to automobile accidents jury verdicts * * *?" Let's suppose for a moment that the court had permitted counsel to pursue this inquiry and one or several of the jurors had replied in the affirmative. The next question would obviously be whether or not the exposure to such reading material would prevent the jurors from reaching a fair and impartial verdict, and this is the very question which both the court and counsel had previously propounded. The court in properly exercising its discretion felt that inquires about the jurors' reading matter were unnecessary.

In Farrow v. Cundiff, Ky., 383 S.W.2d 119 (1964), this Court examined the depth of discretion exercisable by a trial court in limiting the voir dire.

In that case the court refused to allow plaintiff's counsel to ask the jury if any of them had any "scruples or objections against returning a verdict for the full amount of the prayer if the law and the evidence justified it." On appeal the plaintiff relied upon Temperly v. Sarrington's Adm'r, Ky., 293 S.W.2d 863 (1956), wherein a similar question was held to be proper. This Court in effect ruled that the lower court could have, in its discretion, allowed the question, or, by the exercise of the same discretion, could have refused to allow it.

> "We are of the opinion that had the question been asked and the court had refused an answer thereto that such would have been proper because the court has a wide discretion in permitting an examination on voir dire in civil cases. * * * Since the record reveals the efforts of the court to obtain a fair and impartial panel of jurors, we feel that appellant was in no wise prejudiced, nor did the court abuse its wide discretion in refusing counsel permission to ask the jury this question." 383 S.W.2d at 120.

Finally, the appellant contends that the trial court erroneously sustained defense counsel's objections to three questions propounded appellee by appellant's counsel. We do not see any error—prejudicial or otherwise—in the court's ruling on these three objections.

The judgment is affirmed.

All concur.