**Dorothy QUINN et al., Plaintiffs,**

v.

**AETNA LIFE & CASUALTY CO., Defendant.**

No. 78 C 1628.

United States District Court, E. D. New York.

June 28, 1979.

Baron & Vesel, Forest Hills, N. Y. by Martin L. Baron, Forest Hills, N. Y., for plaintiffs.

Paul, Weiss, Rifkind, Wharton & Garrison by Marvin Wexler and Lewis A. Kaplan, New York City, for defendant.

## MEMORANDUM DECISION AND ORDER

SIFTON, District Judge.

This case is now before the Court on defendant's motion for summary judgment or judgment on the pleadings. The three plaintiffs in this action are also plaintiffs in personal injury actions currently pending in state courts in this district. The defendant Aetna Life & Casualty Co. ("Aetna") is an insurance company. Plaintiffs' complaint arises from two advertisements which defendant caused to be published in *Newsweek* and *New York Magazine*. The thrust of both advertisements is that the current system for handling tort claims results in excessive jury awards which increase insurance rates.

The first advertisement pictures a judge reading from a document which states, "When awarding damages in liability cases, the jury is cautioned to be fair and bear in mind that money does not grow on trees. It must be paid through insurance premiums from uninvolved parties, such as yourselves." The picture has a caption which reads in large letters, "Too bad judges can't read this to a jury." The rest of this advertisement discusses two court cases which Aetna believes resulted in excessive verdicts.

The second advertisement pictures a game show announcer with the caption, "And now the big winners in today's lawsuits." The text describes the recent increase in verdicts of over $1 million. Both ads end with the line "Aetna wants insurance to be affordable."

Plaintiffs seek to enjoin defendant from running these and similar advertisements. The complaint alleges that they are part of "a program calculated to tamper with juries in their deliberative process."

### I

### PRIOR PROCEEDINGS

Plaintiffs commenced this action on February 9, 1978 in the Supreme Court of the State of New York, Queens County, against Aetna, *New York Magazine* and *Newsweek*. The action was removed to this Court by Aetna which contended, *inter alia,* that the two magazines were "sham defendants" and that, therefore, complete diversity existed. By Order of this Court dated March 29, 1978, the action was remanded for lack of complete diversity.

Upon remand plaintiffs moved for a preliminary injunction, and each defendant cross-moved to dismiss the complaint. In a decision dated July 5, 1978, reported at 96 Misc.2d 545, 409 N.Y.S.2d 473, the New York Supreme Court (Graci, J.) granted the motions of *New York Magazine* and *Newsweek* to dismiss, denied Aetna's motion to dismiss, and also denied plaintiffs' motion for a preliminary injunction.

In his decision Justice Graci discussed two state law provisions, General Business Law § 350–a, dealing with misleading advertising, and Penal Law § 215.25, dealing with jury tampering. Justice Graci did not find that plaintiffs have an implied right of action based on either of these provisions, but rather found that they have an equitable cause of action for injunction as a result of the fact that they may be injured by defendant's actions and have no adequate remedy at law. 409 N.Y.S.2d at 482.

Following the state court decision plaintiffs consented to an order severing their claims against Aetna from their claims against the magazines. Because complete diversity then existed on plaintiffs' claims against Aetna, the action was, once again, removed pursuant to 28 U.S.C. §§ 1441 and 1446(b). Plaintiffs again moved to remand, and this motion was denied by this Court in an oral opinion on December 15, 1978. The action is now before this Court on defendant's motion for judgment on the pleadings, or in the alternative, summary judgment dismissing the complaint.

### II

### ABSTENTION

As an alternative to their motion to remand, plaintiffs argued that this Court should abstain from deciding the state law

issues. This Court finds that abstention is not appropriate in the present case.

In *Colorado River Water Conservation District v. United States,* 424 U.S. 800, 96 S.Ct. 1236, 47 L.Ed.2d 483 (1976), Justice Brennan divided the Supreme Court's abstention cases into three categories. According to Justice Brennan, abstention is appropriate (1) when a federal constitutional issue might be mooted or presented in a different posture by a state court determination of pertinent state law, (2) where there are "difficult questions of state law bearing on policy problems of substantial public import whose importance transcends the result in the case at bar," or (3) where federal jurisdiction has been invoked for the purpose of restraining state criminal proceedings. *Id.* at 814–17, 96 S.Ct. 1236, 1244.

■ Clearly, the third category has no application in the present case. The first category originated with *Railroad Commission of Texas v. Pullman Co.,* 312 U.S. 496, 61 S.Ct. 643, 85 L.Ed. 971 (1941), a case in which the plaintiff came to federal court seeking equitable relief and the decision was grounded in the discretionary nature of equitable jurisdiction. *See Id.* at 500–01, 61 S.Ct. 643. In the present case, unlike *Pullman,* it is the defendant which seeks a federal forum and does so pursuant to a right given by the federal statute providing for diversity jurisdiction. 28 U.S.C. §§ 1441(a), 1446(b). To abstain in the present case would effectively destroy defendant's statutory right to remove.[1] Further, *Pullman* abstention is appropriate only where the state law is uncertain, *Lindsey v. Normet,* 405 U.S. 56, 62 n.5, 92 S.Ct. 862, 31 L.Ed.2d 36 (1972), and this Court does not believe New York law is uncertain in the present case. But by far the most persuasive reason why this is not an appropriate case for a *Pullman*-type abstention is that plaintiffs request abstention not to seek a state court ruling to avoid the neces-

sity of reaching the constitutional issue, but rather to pursue a state court remedy which requires that the constitutional issue be decided.

■ Plaintiffs' argument in favor of abstention relies primarily on *Naylor v. Case & McGrath, Inc.,* 585 F.2d 557 (2d Cir. 1978). *Naylor* was an action against Aetna's advertising agency and involved advertisements either identical with or similar to those involved in the present case. The *Naylor* court placed *Naylor* in the second *Colorado River* classification because *Naylor* was brought pursuant to a relatively new and recently amended Connecticut statute, Conn.Gen.Statutes § 42–110b(9), allowing for suits by individuals damaged by unfair or deceptive trade practices. 585 F.2d at 563. The Attorney General of Connecticut had filed an amicus brief asking that the court abstain in order to permit issues of first impression under the Connecticut statute to be decided first by a Connecticut state court. 585 F.2d at 559. Thus, unlike the present case, the state law was uncertain and its resolution was a matter of concern to the state. 585 F.2d at 565. It was because the *Naylor* case turned upon complex issues of first impression involving interpretation of a recently enacted and newly amended Connecticut statute, which the State of Connecticut expressed concern in having interpreted by state courts, that the Second Circuit held that abstention was appropriate in that case. *See* 585 F.2d at 565–66. These considerations are entirely absent in the present case which does not involve difficult issues of state law or recently enacted statutes. Additionally, at the stage at which Second Circuit decided abstention would have been appropriate in *Naylor,* the district court had no independent basis for federal jurisdiction, but rather had pendent jurisdiction only. 585 F.2d at 564. This further distinguishes the present case from *Naylor.* For all the

---

1. Defendant argues that this statutory right to removal makes adjudication of the state court issue in a state forum unavailable in the present case since any attempt to reinstitute this case in state court will be met by a further attempt to remove it pursuant to 28 U.S.C. §§ 1332, 1441. This Court need not, and does not decide whether abstention is ever possible following removal, but holds only that it is not appropriate in the present case.

above reasons this Court finds abstention to be inappropriate in the present case.

## III

### LAW OF THE CASE

Plaintiffs argue that Justice Graci's decision denying plaintiffs' motion to dismiss is the law of the case. Defendant concedes that insofar as they now seek judgment on the pleadings their motion is, in substance, identical to the motion to dismiss which was previously denied in state court. They argue, however, that this Court is not bound by Justice Graci's opinion and this Court agrees. The doctrine is discretionary. *First Nat'l Bank of Hollywood v. American Foam Rubber Corp.*, 530 F.2d 450, 543 n.3 (2d Cir. 1976); *GAF Corp. v. Circle Floor Co.*, 329 F.Supp. 823, 826 (S.D.N.Y.1971), *aff'd*, 463 F.2d 752 (2d Cir. 1972), *cert. denied*, 413 U.S. 901, 93 S.Ct. 3058, 37 L.Ed.2d 1045 (1973). In a recent opinion by Judge Friendly, the Second Circuit adopted the following reasoning from Moore, 1B Federal Practice ¶ 0.404[1] at 407:

> "Since a lower federal court cannot by its law of the case bind a higher court having appellate jurisdiction over it, the only sensible thing for a lower court, . . . to do is to set itself right instead of inviting reversal above, when convinced that its law of the case is substantially erroneous."

*Brunswick Corp. v. Sheridan*, 582 F.2d 175, 177 (2d Cir. 1978). The power to reexamine the law of the case is not lost by the transfer from state to federal court. *Hill v. U. S. Fidelity & Guaranty Co.*, 428 F.2d 112, 115 (5th Cir. 1970), *cert. denied*, 400 U.S. 1008, 91 S.Ct. 564, 27 L.Ed.2d 621 (1971). This Court is therefore free to reexamine the decision of the state court denying defendant's motion to dismiss. The reexamination of the state court judge's decision is particularly appropriate in the present case because the primary errors which defendant alleges that the state court committed in-

volve questions of federal constitutional, rather than state law.

## IV

### POSSIBLE BASES OF RELIEF

The conflict between the right to an unbiased jury and the First Amendment is "almost as old as the Republic." *Nebraska Press Ass'n v. Stuart*, 427 U.S. 539, 547, 96 S.Ct. 2791, 49 L.Ed.2d 683 (1976). The specific problem presented here, the conflict between an insurance company's right to communicate its views on the effect of high jury verdicts to the public and of a plaintiff's right to a fair and impartial jury, is also not a new one. A number of courts have dealt with this problem in the past. *Hoffman v. Perrucci*, 117 F.Supp. 38 (E.D. Pa.1953); *United States ex rel. May v. American Machinery Co.*, 116 F.Supp. 160 (E.D.Wash.1953); *Kujawa v. Baltimore Transit Co.*, 224 Md. 195, 167 A.2d 96 (1961); *Hendrix v. Consolidated Van Lines, Inc.*, 176 Kan. 101, 269 P.2d 435 (1954); *Murrell v. Spillman*, 442 S.W.2d 590 (Ky.1969); *Farmer v. Pearl*, 415 S.W.2d 358 (Ky.1967); *Graham v. Waite*, 23 A.D.2d 628, 257 N.Y. S.2d 629 (4th Dep't 1965); *Johnson v. Hansen*, 237 Or. 1, 389 P.2d 330 (Or.1964). In all reported cases plaintiffs have been unsuccessful in seeking an injunction against advertisements such as those in the present case, *Hoffman v. Perrucci, supra* at 40, or in seeking to hold insurance companies running such advertisements in contempt, *Id.; United States ex rel. May v. American Machinery, supra* at 162; *Hendrix v. Consolidated Van Lines, supra* at 442 (criminal contempt). Attempts to question jurors upon voir dire examination about the contents of such advertisements have met with mixed results. *Compare Farmer v. Pearl, supra,* (questioning not allowed) *and Kujawa v. Baltimore Transit Co., supra,* (same) *with Hoffman v. Perrucci, supra,* (questioning permissible) *and Graham v. Waite, supra,* (same). At least one state provides an action for damages in the circumstances plaintiffs allege exist here. 17 P.S. § 2045.[2]

---

**2.** This statute provides in pertinent part, "If any . . . publication shall improperly

tend to bias the minds of the public, or of the court, the officers, jurors, witnesses or any of

Plaintiffs in the present case do not seek money damages or to hold defendant in contempt. They seek only an injunction. Although plaintiffs have not expressly urged the finding of an implied right of action, they have referred to two New York statutes, N.Y.Gen.Bus.Law § 350 and N.Y. Penal Law § 215.25, as setting forth the policy of New York with respect to the advertisements involved in this lawsuit. It is clear that the relief sought here by plaintiffs is not available as an implied cause of action under either statute.

New York General Business Law Article 22–A § 350, adopted in 1963, declares that false advertising is unlawful and provides for enforcement by the Attorney General. Section 350–d, however, states that Article 22–A "neither enlarges nor diminishes the rights of parties in private litigation." This expresses a legislative intent against an implied right of action based on this statute.

New York Penal Law § 215.25 makes jury tampering a crime. Although New York allows private rights of action based upon penal statutes in some cases, *Spock v. United States,* 464 F.Supp. 510, 516 (S.D.N.Y.1978), the statute involved must be a "penal State statute which imposes a duty upon another" and the person seeking enforcement of the statute must be a "person having a special interest in the performance thereof." *General Teleradio, Inc. v. Manuti,* 284 A.D. 400, 131 N.Y.S.2d 365, 369 (1st Dep't 1954). *See Amberg v. Kinley,* 214 N.Y. 531, 535, 108 N.E. 830, 831 (1915); *Willy v. Mulledy,* 78 N.Y. 310, 314 (1879); *Johnson v. Clay Partition Co.,* 93 Misc.2d 414, 402 N.Y.S.2d 912 (Sup.Ct.1977). Neither condition is met by the statute at issue here.

This Court also finds that New York law can provide no equitable remedy in the circumstances presented here. In order to state an equitable cause of action for an injunction, a plaintiff must first show (1) the violation of a right presently occurring or imminently threatened, (2) no adequate remedy at law exists, and (3) a serious irreparable injury will result if an injunction is not granted. *Nicowski v. Nicoski,* 50 Misc.2d 167, 269 N.Y.S.2d 773, 776 (Sup.Ct.1966). *See Mills Novelty Co. v. Sunderman,* 266 N.Y. 32, 36, 193 N.E. 541, 542 (1934). The state court judge concluded that the advertisement (1) would have an adverse effect on plaintiff's right to an impartial jury, 409 N.Y.S.2d at 482, and (2) that plaintiffs had no adequate remedy at law. *Id.* The first conclusion is highly speculative. How many, if any, of the jurors who will actually sit on plaintiffs' case will have read defendant's advertisements, to say nothing of remembering and being guided by them, is incapable of determination. The second conclusion, that plaintiffs' remedies at law—which include the right to voir dire,[3] proper jury instructions, and the jurors' oath—are inadequate to overcome what prejudicial effect these advertisements may have is untenable. *See Nebraska Press, supra,* 427 U.S. at 563–65, 96 S.Ct. 2791; *Oliver v. Postel,* 30 N.Y.2d 171, 182, 331 N.Y.S.2d 407, 415, 282 N.E.2d 306, 311 (1972). The courts regularly rely on such means to secure juries untainted by newspaper coverage of much more pointed prejudicial effect.

Even if all three criteria for an injunction were met, however, this court would not find plaintiff entitled to relief. An injunction "is an extraordinary remedy to be granted or withheld by a court of equity in the exercise of its discretion." *Kane v. Walsh,* 295 N.Y. 198, 205, 66 N.E.2d

---

them, on a question pending before the court, it shall be lawful for any person who shall feel himself so aggrieved thereby to proceed against the author, printer and publisher thereof, or either of them by indictment, or he may bring an action at law against them, or either of them, and recover such damages as a jury may think fit to award." Act of June 16, 1836, § 27, 17 P.S. § 2045.

3. In the only recorded New York decision which discusses the issue, the court found that a lawyer may inquire about advertisements such as those involved here on voir dire. *Graham v. Waite,* 23 A.D.2d 628, 257 N.Y.S.2d 629, 630 (4th Dep't 1965).

53, 55 (1946); *Lexington & Fortieth Corp. v. Callaghan,* 281 N.Y. 526, 531, 24 N.E.2d 316, 318 (1939). Among the factors weighing against the grant of an injunction is the maxim that equity will not undertake to restrain a criminal act unless the act is a nuisance per se. *Baum v. Ryerson Towers,* 55 Misc.2d 1045, 287 N.Y.S.2d 791 (Sup.Ct. 1968). Plaintiffs allege that the advertisements in question are illegal jury tampering in violation of N.Y. Penal Law § 215.25. Although the principle that equity will not enjoin a criminal act is not without exceptions, it has greater force in the situation where the criminal penalties are adequate to protect the rights involved. *People ex rel. Bennet v. Laman,* 277 N.Y. 368, 380, 14 N.E.2d 444 (1938). In the present case there is no allegation that a conviction for jury tampering would not result in the end of the advertisements in question. The fact that a conviction for jury tampering may be unlikely is not a weighty consideration. *See Id.,* 277 N.Y. at 381–82, 14 N.E.2d at 445.

■ However, the most important consideration weighing in favor of exercising discretion against the granting of an injunction in the present case is the constitutional presumption against a prior restraint on speech. *Nebraska Press Ass'n v. Stuart, supra,* 427 U.S. at 558, 96 S.Ct. 2791. This Court believes that had the state court judge not misconstrued the nature of the constitutional problem here involved he would have chosen to exercise his discretion against the finding of a cause of action for an injunction. In fact, this Court finds that the advertisements here sought to be enjoined are entitled to First Amendment protection and could not be restrained even if a valid cause of action exists. Because they are protected, plaintiffs have no cause of action in equity and the complaint must be dismissed.

## V

## CONSTITUTIONAL ISSUES

■ The relief sought here is a prior restraint on speech. The guarantees of the First Amendment "afford special protection against orders that prohibit the publication or broadcast of particular information or commentary." *Nebraska Press Ass'n v. Stuart, supra,* 427 U.S. at 556, 96 S.Ct. at 2801; *Near v. Minnesota ex rel. Olsen,* 283 U.S. 697, 717, 51 S.Ct. 625, 75 L.Ed. 1357 (1931). The state court judge in the present case found that the speech in question is "not protected." 409 N.Y.S.2d at 479. The state court judge engaged in a fundamental misconception by calling the advertisements here in question "commercial speech," *see* 409 N.Y.S.2d at 476, and relying on cases such as *Virginia Pharmacy Board v. Virginia Consumer Council,* 425 U.S. 748, 96 S.Ct. 1817, 48 L.Ed.2d 346 (1976), which, in *dicta, see Id.* 425 U.S. at 771–73, 96 S.Ct. 1817, describe permissible regulation of speech which does "no more than propose a commercial transaction." *Pittsburgh Press Co. v. Human Relations Comm'n,* 413 U.S. at 762, 96 S.Ct. at 1825. The speech involved in the present case is not commercial speech removed from any "exposition of ideas." *Chaplinsky v. New Hampshire,* 315 U.S. 568, 572, 62 S.Ct. 766, 86 L.Ed. 1031 (1942). The speech involved here is fully protected political expression. The degree of protection afforded the expression is not lessened by the fact that it is contained in a paid advertisement, *Buckley v. Valeo,* 424 U.S. 1, 51, 96 S.Ct. 612, 46 L.Ed.2d 659 (1976); *New York Times Co. v. Sullivan,* 376 U.S. 254, 265–66, 84 S.Ct. 710, 11 L.Ed.2d 686 (1964), or that the speaker is a corporation rather than a natural person. *First National Bank of Boston v. Bellotti,* 435 U.S. 764, 777, 98 S.Ct. 1407, 55 L.Ed.2d 707 (1978). Nor is the protection given to speech directed at issues of public concern lost because of improper intent of the speaker.[4] *See Eastern Railroad Presidents*

---

4. The advertisements in question were not directed solely to jurors but to the general reading public. Whether or not defendant intended the advertisement to have the effect of causing jurors to return lower awards, as plaintiffs allege, is irrelevant to the question of whether the speech directed to the general public is protected. This case does not present the situation where the information presented in the advertisements is sent directly to the jurors in

*Conference v. Noerr Motor Freight, Inc.,* 365 U.S. 127, 139, 81 S.Ct. 523, 5 L.Ed.2d 464 (1961). The First Amendment protects the speech itself. *See First National Bank, supra,* 435 U.S. at 776–77, 98 S.Ct. 1407. The contents of speech cannot be suppressed because we find the speaker biased or the conclusions erroneous or misleading, "[T]he people in our democracy are entrusted with the responsibility for judging and evaluating the relative merits of conflicting arguments." *Id.* at 791, 98 S.Ct. at 1424. It is presumed that in evaluating such speech "the source and credibility of the advocate" will be considered. *Id.* at 792, 98 S.Ct. at 1424.

 Any prior restraint on expression carries with it a "heavy presumption against its constitutional validity." *Nebraska Press Ass'n v. Stuart, supra,* 427 U.S. at 558, 96 S.Ct. 2791; *Carroll v. Princess Anne,* 393 U.S. 175, 181, 89 S.Ct. 347, 21 L.Ed.2d 325 (1968); *Bantam Books, Inc. v. Sullivan,* 372 U.S. 58, 70, 83 S.Ct. 1631, 9 L.Ed.2d 584 (1963). The state court judge found that the presumption was overcome by the need to balance the right to free speech with the right to a fair trial. The state judge found that "the balance weighs more heavily on the side of fair trial." 409 N.Y.S.2d at 480. This Court disagrees.[5]

 In *Nebraska Press Ass'n v. Stuart, supra,* the Supreme Court considered this conflict between free speech and a fair trial and struck the balance differently. In overturning the "gag order" which barred the press from discussing a confession by an accused mass murderer, the Supreme Court indicated that a prior restraint on speech could not be justified by the need to insure a fair trial. *Id.* 427 U.S. at 570, 96 S.Ct. 2791. Although the *Nebraska Press* case presented a very different situation from that presented here, the case for a prior restraint was in several important respects stronger there. In *Nebraska Press* the speech sought to be restrained, accounts of confessions and admissions of the defendant, 427 U.S. 545, 96 S.Ct. 2791, was more likely to be prejudicial to a fair trial than that sought to be restrained here. Further, the consequences for the accused in *Nebraska Press* were graver than the potential consequences for plaintiff here and the constitutional right sought to be protected was stronger.[6] On the other hand the type of speech at issue in *Nebraska Press,* news accounts of public judicial proceedings, "have been afforded special protection." 427 U.S. at 559, 96 S.Ct. 2791.[7] On balance, however, this Court believes that the holding in *Nebraska Press* bars the granting of an injunction in the present case.[8]

---

a particular case or to those called for jury duty. This Court need not consider whether an injunction would be appropriate in such a case.

5. The state court judge based his decision on this issue on *Gannet Co. Inc. v. DePasquale,* 43 N.Y.2d 370, 401 N.Y.S.2d 756, 372 N.E.2d 756 (1977). *See* 409 N.Y.S.2d at 480. *DePasquale* involved an order excluding the public and the press from a pretrial hearing. It did not restrain anyone's right to speak. This is a very different situation from that presented here. *See Nebraska Press Ass'n v. Stuart, supra.*

6. Although the state court judge refers to plaintiffs' Sixth Amendment rights to an impartial jury, *see* 409 N.Y.S.2d at 479, 480, 481, the Sixth Amendment by its own terms only applies to criminal prosecutions. The right to a jury trial in civil cases is contained in the Seventh Amendment which is not made applicable to the states by the Fourteenth Amendment. *Alexander v. Virginia,* 413 U.S. 836 (1973); *Fay v. New York,* 332 U.S. 261 (1947). The Sixth Amendment right to a trial by an impartial jury

is made applicable to the states by the Fourteenth Amendment. *Duncan v. Louisiana,* 391 U.S. 145 (1968). In the present case plaintiffs' right to a jury trial in their state court actions comes from Article I, § 2 of the New York State Constitution, not from the Sixth or the Seventh Amendments. In the *Nebraska Press* case the Sixth Amendment right to an "impartial jury" was involved.

7. Chief Justice Burger's opinion indicates that it is the fact that the information is about judicial proceedings and not that it was contained in news reports that entitled it to special protection. 427 U.S. at 559. *See First Nat'l Bank v. Bellotti, supra,* at 795–801 (Burger, J. concurring).

8. In *Rutledge v. The Liability Insurance Industry,* 78 C. 1506 (W.D.La. June 8, 1979), the court reached the same conclusion in a similar case.

Because this Court finds that no cause of action is stated and that, in any event, the First Amendment bars the relief sought in the present case, defendant is granted judgment on the pleadings.

The Clerk is directed to enter judgment dismissing the complaint and to mail a copy of this decision to counsel for all parties.

SO ORDERED.