**Kevin NAYLOR, Plaintiff-Appellant,**

v.

**CASE AND McGRATH, INC.,
Defendant-Appellee.**

**No. 1299, Docket 78–7245.**

United States Court of Appeals,
Second Circuit.

Argued Aug. 16, 1978.
Decided Oct. 11, 1978.

Beverly J. Hodgson, Bridgeport, Conn. (Theodore I. Koskoff, Richard A. Bieder, and Koskoff, Koskoff & Bieder, P. C., Bridgeport, Conn., of counsel), for appellant.

Dion W. Moore, Bridgeport, Conn. (Pullman, Comley, Bradley & Reeves and Frederick L. Comley, Bridgeport, Conn., of counsel), for defendant.

Robert M. Langer, Asst. Atty. Gen., Hartford, Conn. (Carl R. Ajello, Atty. Gen. of Conn., Hartford, Conn., of counsel), for the State of Connecticut as amicus curiae.

Before VAN GRAAFEILAND, Circuit Judge, MARKEY,* Chief Judge, United States Court of Customs and Patent Appeals, and DOOLING,** District Judge.

DOOLING, District Judge.

The questions raised on this appeal are whether the Court below should have abstained from deciding the question of Connecticut statutory interpretation on which its decision turned, and whether, if the question was properly before the Court, for decision, it was correctly decided.

Appellant commenced an action in the Superior Court, Fairfield County, on February 3, 1978, against two advertising agencies alleging that he had pending in the Fairfield County Superior Court a personal injury action in which he had requested a jury and that he was representative of a number of other people similarly situated; he alleged that appellee Case & McGrath, Inc. had published advertisements, three examples of which were annexed to the complaint, which, appellant alleged, contained unfair, deceptive and/or misleading statements and lies and untruths concerning the size of jury verdicts in personal injury actions; he alleged further that the advertisements suggested that jurors should disregard their oaths and that the judges did not caution jurors respecting their obligations; and the complaint pointed out alleged specific misstatements of fact in the illustrative data used in the advertisements. Appellant's complaint further alleged that Case & McGrath wilfully engaged in such "deceptive trade practices" in violation of Section 42–110b(a) of the Connecticut Unfair Trade Practices Act. In the first count appellant prayed a declaration that he represented a class, and he sought a temporary and permanent injunction against "unfair, deceptive, untrue and /or misleading advertising", an order requiring defendants to publish rectifying advertisements, and an award of punitive damages and reasonable attorneys fees. In a second count appellant further alleged that he and the class whom he represents have suffered an ascertainable loss of property through interference with their constitutionally guaranteed right to a fair and impartial jury trial; the pray-

** Of the United States District Court for the Eastern District of New York, sitting by designation.

er for relief in the second count added a claim for actual damages. A third count, framed under 42 U.S.C. § 1985(3), charged that the defendant advertising agencies exchanged information and coordinated advertising programs with a number of other companies and institutions with the design to deprive the plaintiff directly or indirectly of rights, privileges and immunities guaranteed by the Constitution and Laws of the United States and of Connecticut.

Defendant Case & McGrath removed the case to the United States District Court on March 1, 1978, on the federal question ground. The second named defendant, a partnership, Keiler, Garrett & McKinlay Advertising, joined in the removal petition.

Appellant had moved in the state court by order to show cause for a preliminary injunction, and, after removal, a renewed motion was filed on March 7th. Another action, *Young, et al. v. Crum & Forster, et al.*, had earlier been removed from the state court to the district court and, on motion of Case & McGrath, the case of *Naylor v. Case & McGrath, et al.*, was consolidated with *Young, et al. v. Crum & Forster, et al.* on March 10th. On March 21st to 23rd the insurance company defendants in the *Young* case and Crum & Forster moved to dismiss the action on the ground that the complaint did not state a claim upon which relief could be granted.

The memoranda of law submitted in support of the motions to dismiss argued the merits of the complaint, specifically contending that the defendant insurance companies were not subject to regulation under the Unfair Trade Practices Act but were regulated in respect of their advertising by a special Act applicable to insurance companies, that the plaintiff was not injured by the activities complained of and was not entitled to sue under the Act, that for a variety of reasons no case was made out under Section 1985(3), and that in any case the advertisements represented utterances on matters of public concern and in consequence were protected by the First Amendment. Appellant in answer contended that all of the issues raised by the defendants necessarily involved questions of fact which could not be decided upon motions to dismiss. Appellant met the contentions concerning the applicability of the Unfair Trade Practices Act by argument directed to the merits, presented an elaborate argument in support of the claim under Section 1985(3), and met defendant's First Amendment arguments with the contention that the advertisements were essentially commercial speech protected only to the extent that they were neither false nor misleading and were not broadly protected speech directed to matters of public concern. On April 6th, the date on which plaintiff's memorandum in support of its complaint was filed, appellant also filed a withdrawal of the Section 1985(3) count in the Case & McGrath complaint. On the same day the Attorney General of the State filed the State's brief *amicus curiae* contending that insurance companies were subject to the state Unfair Trade Practices Act, and arguing, in response to a request of the Court that the point be briefed, that the District Court should invoke the doctrine of abstention, since the case presented a number of questions of first impression arising under the Unfair Trade Practices Act which should first be resolved in the State Court and the resolution of which might obviate the constitutional questions which the insurance companies raised under the First Amendment.

The motions for a preliminary injunction and to dismiss came on for hearing on April 10th. On that day the Court granted appellant leave to withdraw without prejudice the count framed under Section 1985(3) and approved a stipulation by which appellant dismissed the action against defendant Keiler, Garrett & McKinlay Advertising, pursuant to Rule 41(a)(1) of the Federal Rules of Civil Procedure.

When, therefore, the matter came on for hearing on April 10th the cause of action on which the case had been removed to the Federal Court had been dismissed, and, for the first time, diversity of citizenship apparently existed. That is not altogether clear on the face of the pleadings since the com-

plaint alleges only that plaintiff was a resident of Connecticut and there is no allegation of the plaintiff's citizenship nor of the amount in controversy. The removal had been based on pendent jurisdiction grounds (28 U.S.C. § 1441(a), (b); *United Mine Workers v. Gibbs,* 1966, 383 U.S. 715, 725–726, 86 S.Ct. 1130, 16 L.Ed.2d 218; *Hazel Bishop, Inc. v. Perfemme, Inc.,* 2d Cir. 1963, 314 F.2d 399, 403; 1A Moore's Federal Practice 270–271, Par. 0.163 [4–5]), and, alternatively, on the ground that the count under Section 1985(3) was a separate and independent claim or cause of action and the case, therefore, was removable under 28 U.S.C. § 1441(c).

At the hearing the Court noted, after granting leave to withdraw the count under Section 1985(3), that, treating the remaining causes of action as remandable under Section 1441(c), "The Court has discretion to retain them or to remand them." Referring to *Hazel Bishop, supra,* 314 F.2d at 403, and 1A Moore's Federal Practice 173, the Court then expressed concern about the question of comity, and whether or not some of the issues raised, particularly in the Attorney General's brief, should not more appropriately be first determined by the State Court. None of the defendants urged remand or abstention on the Court, but the Attorney General pointed out that it "would be illuminating to have all the standing issues decided initially by a State Court" and also the issue "as to whether the advertising is commercial or noncommercial." Appellant's counsel stated

"The truth of the matter is that we really don't care where the case is. We raised the issues. We did our jobs. We felt that the Attorney General's brief did his. I don't care. We are not making any motion to remand.

"It's entirely within your jurisdiction to do it any way you see fit. And I felt that what the Attorney General's Office said was persuasive on the question of comity. And I felt that there are no real Federal constitutional issues involved here."

The Court did not then decide the issue but gave the parties time to submit memoranda. A further hearing was held on April 13th. The record of the proceedings on that day is incomplete, but it does appear that the question whether the advertisements were commercial speech was argued as well as the question of appellant's standing under the statute to sue for injunctive relief and for damages. The Court dismissed Counts 1 and 2 relating to the Connecticut Unfair Trade Practices Act for failure to state a claim upon which relief could be granted, and on the next day a judgment dismissing the action was entered.

On May 5 defendant moved to be relieved of the judgment pursuant to Rule 60(b) saying that the judgment had been entered after oral argument concerning plaintiff's lack of standing to sue under the Unfair Trade Practices Act if plaintiff was not a consumer or a competitor, and that after the entry of the judgment appellant's counsel learned of a case in the Connecticut Court dealing with "the exact point" which the District Court had asked counsel to argue—the case of *Mattatuck Bank & Trust Co. v. House of Elegance, Inc., et al.,* Superior Court, District of Waterbury, August 16, 1977. In that case House of Elegance had given a lien on its inventory to the plaintiff bank to secure a loan and later had sold part of the inventory to Pierpont. Pierpont, in turn, included the House of Elegance inventory in a Bulk Sale of its own inventory causing the plaintiff bank to lose its security interest. The bank sued Pierpont under the Unfair Trade Practices Act and the Court overruled Pierpont's demurrer to the bank's claim, impliedly rejecting the contention that a plaintiff had to be either a consumer or a competitor to have standing to sue under the Unfair Trade Practices Act provided one could show an ascertainable loss of money or property as the result of a seller's employment of an unfair method or act or practice.

The motion was heard on May 9, 1978, and at the conclusion of the argument the Court ruled

"With due regard and appropriate respect to [the *Mattatuck Bank*] decision,

and with an awareness that it was delivered in a completely as I view it different factual pattern, I do not find it persuasive. And I do not believe that the plaintiffs in either one of the cases are within the classes that are meant by the legislature to be protected by [the Connecticut Unfair Trade Practices Act].

"And, accordingly, I adhere to my earlier ruling that the plaintiffs lack standing under the [Unfair Trade Practices Act] and the counts that went out before in both complaints . . . remain out."

I

The Court below considered whether it should remand the case to the state court after the claim under Section 1985(3) was withdrawn, and of its own motion raised the issue of abstention. The incomplete record indicates that the Court considered the question whether it should retain jurisdiction because of the extent of the commitment of federal judicial resources to the non-federal claims represented by the first two counts under the Unfair Trade Practices Act, saying:

"I don't think there's enough invested here to necessarily invoke the *Hazel Bishop* line of cases and compel my discretion to keep it here. And yet there's enough invested that I'm not tempted to say automatically, 'Go off,' because the 1985 claim is now out of the case."

■ On the issue of remanding a case to the state court when the federal ground of jurisdiction is withdrawn or fails, the cases furnish little certain guidance. Much may depend on whether the case was removed as one embracing a federal claim and pendent state claims or was a case containing a separate and independent claim or cause of action which was within the federal jurisdiction along with distinct state law claims which were not within the federal jurisdiction on any ground. Where, as in this case, the state and federal claims do derive from a common nucleus of operative facts and are such as would ordinarily be tried in one judicial proceeding, pendent jurisdiction is a doctrine of discretion (*United Mine Workers*

*v. Gibbs,* 1966, 383 U.S. 715, 725–727, 86 S.Ct. 1130, 16 L.Ed.2d 218).

"Its justification lies in considerations of judicial economy, convenience and fairness to litigants; if these are not present a federal court should hesitate to exercise jurisdiction over state claims, even though bound to apply state law to them . . . .. Needless decisions of state law should be avoided both as a matter of comity and to promote justice between the parties, by procuring for them a surer-footed reading of applicable law. Certainly, if the federal claims are dismissed before trial, even though not insubstantial in a jurisdictional sense, the state claims should be dismissed as well. Similarly, if it appears that the state issues substantially predominate, whether in terms of proof, of the scope of the issues raised, or of the comprehensiveness of the remedy sought, the state claims may be dismissed without prejudice and left for resolution to state tribunals." (383 U.S. at 726–727, 86 S.Ct. at 1139; footnote numerals and footnotes omitted.)

See also *Almenares v. Wyman,* 2d Cir. 1971, 453 F.2d 1075, 1083–1084.

The Court below did not advert to the suggestion in the removal petition that counts one and two might be thought to state claims under Section 5(a)(1) of the Federal Trade Commission Act (15 U.S.C. § 45(a)(1)), and it is clear that no private right of action arises under that Act. *Alfred Dunhill Ltd. v. Interstate Cigar Co.,* 2d Cir. 1974, 499 F.2d 232, 237; *Holloway v. Bristol-Myers Corp.,* 1973, 158 U.S.App.D.C. 207, 485 F.2d 986; *Carlson v. Coca Cola Co.,* 9th Cir. 1973, 483 F.2d 279. The Court did refer to *Hazel Bishop Inc. v. Perfemme, Inc.,* 2d Cir. 1963, 314 F.2d 399, in which the Court approved, as a permissible exercise of pendent jurisdiction (314 F.2d at 403), the lower court's retaining and trying as a contract case a case which had been removed as a case arising under the Trademark Law, although the plaintiff had apparently abandoned its claims of trademark infringement and unfair competition (which furnished a ground of removal under 28 U.S.C.

§ 1338(b)). And the court below used language which traces to *Murphy v. Kodz*, 9th Cir. 1965, 351 F.2d 163, 167–168, where the Court said, in a removed case in which "the federal removal predicate was subsequently dropped from the proceedings", that federal jurisdiction was not ousted but that "existence of power to adjudicate a controversy is not always co-extensive with the propriety of its exercise." The court said

"Where the federal head of jurisdiction has vanished from the case, and there has been no substantial commitment of judicial resources to the nonfederal claims it is, as Judge Merrill of this court has written, akin to 'making the tail wag the dog,' for the District Court to retain jurisdiction. . . . These considerations give rise to a discretion in the District Court to dismiss the complaint and remand the case to the State court."

The court concluded that the district court's proceeding to try the nonfederal claims did not afford a ground for reversal since the defendant's failure to move for a remand when the federal claim was disposed of denied the district court the opportunity to exercise its discretion and therefore precluded the defendant, who was unsuccessful at the trial, from raising the point on appeal.

The later cases, while not departing from the view that jurisdiction once obtained in a pendent jurisdiction case persists although the original ground of federal jurisdiction has disappeared (*Armstrong Paint & Varnish Works v. Nu-Enamel Corp.*, 1938, 305 U.S. 315, 324–325, 59 S.Ct. 191, 83 L.Ed. 195; *Brown v. Eastern States Corp.*, 4th Cir. 1950, 181 F.2d 26, 28–29), emphasize the concerns of comity and of federalism, and encourage remanding to the state courts cases in which state court adjudication can properly claim primacy of interest. *Ondis v. Barrows*, 1st Cir. 1976, 538 F.2d 904, 908; *Watkins v. Grover*, 9th Cir. 1974, 508 F.2d 920; *Brough v. United Steelworkers of America*, 1st Cir. 1971, 437 F.2d 748, 750; *Rotermund v. United States Steel Corp.*, E.D.Mo.1972, 346 F.Supp. 69, 76, aff'd on federal law points, 8th Cir. 1973, 474 F.2d 1139; *cf. Koufakis v. Carvel*, 2d Cir. 1970,

425 F.2d 892, 900; *Clairol Inc. v. Gillette Co.*, 2d Cir. 1968, 389 F.2d 264, 267–268. See *Duncan v. Furrow Auction Co.*, 4th Cir. 1977, 564 F.2d 1107, 1108 fn. 1.

■ At the time when the Court was called upon to act there had been no trial and the action was little more than two months old. If depositions had been taken, as apparently they had been, there is no reason to believe that they were lost to the litigation if it continued in the state court, nor is there reason to suppose that the investment of federal judicial time in the case was lost to the ultimate resolution of the issues to be tried. No motion to remand the case to the state court was made, and the defendants, although free to make the motion, were evidently not disposed to do so. In these circumstances failure to remand the case went beyond the limits of the discretion granted in Section 1441(c), where it is applicable, and beyond the principles determining the exercise of discretion outlined in *Gibbs*, unless the diversity of citizenship that probably exists between appellant and appellee authorized or required a retention of jurisdiction.

■ The record does not indicate that diversity was put forward as a ground for retaining the case in the federal court, it was not a ground of removal, and the allegations in the removal petition and in the complaint do not supply allegations of appellant's citizenship and of the requisite jurisdictional amount. At the time the case was originally removed to the federal court it could not have been removed on diversity grounds because of the presence of the second defendant, a Connecticut partnership, presumably of the same citizenship as the plaintiff-appellant. The district court, nevertheless, has the power to grant leave to amend the complaint and the removal petition to show jurisdiction (*Prescription Plan Service Corp. v. Franco*, 2d Cir. 1977, 552 F.2d 493, 496–497; *Cox v. Livingston*, 2d Cir. 1969, 407 F.2d 392; *John Birch Society v. National Broadcasting Co.*, 2d Cir. 1967, 377 F.2d 194; *Keene Lumber Co. v. Leventhal*, 1st Cir. 1948, 165 F.2d 815,

818–819; *International Ladies' Garment Workers' Union v. Donnelly Garment Co.,* 8th Cir. 1941, 121 F.2d 561, 563) if that is in the interest of justice, taking into account all of the factors bearing on the court's exercise of its discretion. In this case those factors must prominently include the same factors which, but for the diversity of citizenship point, would clearly require remand of the case to the state court.

## II

In the court below the *amicus curiae,* the State of Connecticut, urged abstention on the court; the appellant did indeed in argument indicate sympathy with the state's abstention point but neither affirmatively sought that relief nor moved to remand the case after the claim under Section 1985(3) was dismissed. While all parties, of course, argue the point of the appellant's standing under the Unfair Trade Practices Act, principal emphasis has been on the argument for and against abstention.

 That it was the intervenor only that formally raised the abstention point is not material. Abstention may be raised by the court *sua sponte. Bellotti v. Baird,* 1976, 428 U.S. 132, 143, fn. 10, 96 S.Ct. 2857, 49 L.Ed.2d 844; *Brown v. First National City Bank,* 2d Cir. 1974, 503 F.2d 114, 117–118.

 Abstention was the appropriate course for the district court to follow, certainly after it approved the dismissal of the claim under Section 1985(3). The Unfair Trade Practices Act became effective in July 1973, was very materially amended effective July 1, 1975, and was still further amended materially effective June 1, 1976. The statute has not been interpreted by Connecticut's court of last resort, and the only lower court decision, approaching the issues bruited in the present case, the *Mattatuck Bank* case, while not necessarily inconsistent with the view taken by the district court in the present case, reflects a significantly different approach to the statute.

The Unfair Trade Practices Act is hinged on one central proscription (Connecticut General Statutes § 42–110b(a)):

"No person shall engage in unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce."

That language is, plainly, drawn from the Federal Trade Commission Act, and the Connecticut Act, as amended in 1976 provides that the Commissioner of Consumer Protection, who is charged with the administration of the Act, and the Courts of Connecticut, "shall be guided by interpretations given by the federal trade commission and the federal courts to section 5(a)(1) of the Federal Trade Commission Act (15 U.S.C. 45(a)(i)), as from time to time amended." The Commissioner of Consumer Protection may by regulation, establish the acts, practices or methods which shall be deemed to be unfair or deceptive in violation of the Act, but such regulations must not be inconsistent with the rules, regulations and decisions of the Federal Trade Commission and the Federal Courts in their interpretations of the Federal Act. The Act empowers the Commissioner of Consumer Protection to investigate, issue complaints and after hearing issue cease and desist orders, which he may appeal to the courts to enforce. The enforcement court, in addition to enjoining the violation complained of, may provide for the restoration to any person in interest of any money or property acquired by means of any practices prohibited by the Act, and may appoint a receiver for or revoke the authority of the respondent to engage in business in Connecticut.

The Connecticut Act differs radically from the Federal Act in providing that individuals who suffer any ascertainable loss of money or property as a result of a seller's or lessor's use of a method, act or practice prohibited by the Act may sue for his actual damages and such persons may bring a class action on behalf of themselves and others similarly situated.

It is urged in support of abstention that questions of the first importance in the interpretation of the Unfair Trade Prac-

tices Act were presented in the present case which have not been passed on in the state courts. The questions emphasized are those which will not be settled or influenced by precedents evolved under the Federal Trade Commission Act, but those which are peculiar to the Connecticut Act, and in particular so much of the Connecticut Act as provides for private remedies by individual suits and class actions for damages and for injunctions. A threshold question is whether the Unfair Trade Practices Act applies to insurance companies, since under Connecticut General Statutes § 38–61 unfair methods of competition and unfair and deceptive acts or practices in the insurance business are elaborately defined, and the Commissioner of Insurance is given the power to initiate proceedings to abate the unfair practice; in addition Section 38–63 provides for the Commissioner's dealing with unfair practices not enumerated in Section 38–61. A second question, that which the court below directly passed on, is whether plaintiff, is, within the meaning of Section 42–110g of the Act, a person who suffered an ascertainable loss of money or property as a result of the use or employment "by such seller or lessor of a method, act or practice prohibited by section 42–110b." A still further question arises under Section 42–115e of the Connecticut General Statutes; that section authorizes a person likely to be damaged by a deceptive trade practice to obtain an injunction against the practice upon the principles of equity, without proof of monetary damage, loss of property, competition, actual confusion or misunderstanding or intent to deceive. Somewhat distinct from the narrower questions of statutory interpretation is the question whether the advertisements in question because of their nature come within the ambit of the statute at all. The question in this aspect tends to merge into the question of the extent of the freedom of commercial speech. Cf. *Virginia State Board of Pharmacy v. Virginia Citizens Consumer Council*, 1976, 425 U.S. 748, 769–771, 96 S.Ct. 1817, 48 L.Ed.2d 346; *Bates v. State Bar of Arizona*, 1977, 433 U.S. 350, 383, 97 S.Ct. 2691, 53 L.Ed.2d 810; *FTC v. National Commission on Egg Nutrition*, 7th Cir. 1975, 517 F.2d 485, 489.

The case is one for abstention. Here federal jurisdiction had been attenuated when the Section 1985(3) claim was dismissed, and nothing remained in the present case except the purely state law questions beyond which lurked the defense emphasis on the First Amendment. The possibility that the case could be disposed of on non-federal grounds and thus avoid the need to pass on the First Amendment questions was plainly present and indeed was brought forward by the arguments made for dismissing the case on the ground that plaintiff lacked standing to sue. At that point the case was fairly within the first of the three convenient classes into which *Colorado River Water Conservation District v. United States*, 1976, 424 U.S. 800, 814, 96 S.Ct. 1236, 47 L.Ed.2d 483, divided the abstention cases. In this case as in *Bellotti v. Baird*, 1976, 428 U.S. 132, 146–147, 96 S.Ct. 2857, 2866, 49 L.Ed.2d 844, the district court should have abstained pending construction of the statute by the state courts:

> " . . . abstention is appropriate where an unconstrued state statute is susceptible of a construction by the state judiciary 'which might avoid in whole or in part the necessity for federal constitutional adjudication, or at least materially change the nature of the problem'".

See also *Lake Carriers' Association v. MacMullan*, 1972, 406 U.S. 498, 510–511, 92 S.Ct. 1749, 32 L.Ed.2d 257; *Askew v. Hargrave*, 1971, 401 U.S. 476, 91 S.Ct. 856, 28 L.Ed.2d 196; *Reetz v. Bozanich*, 1970, 397 U.S. 82, 90 S.Ct. 788, 25 L.Ed.2d 68.

A more immediate ground of abstention is that illustrated in the second group of cases discussed in *Colorado River Water Conservation District v. United States, supra*, 424 U.S. at 814–816, 96 S.Ct. 1236. The questions of state law presented here are not free of difficulty, and they bear importantly on the formation of enforcement policy around the relatively new and recently amended Unfair Trade Practices Act of the State, an important consumer protection statute. The difficulties in the consumer protection field with federal class actions,

turning on the jurisdictional amount problem, give special importance to the enactment and implementation of such statutes as the Connecticut Unfair Trade Practices Act. As the Court, speaking of district court decisions on state law questions, said in *Railroad Commission v. Pullman Co.*, 1941, 312 U.S. 496, 499, 61 S.Ct. 643, 645, 85 L.Ed. 971,

> ". . . no matter how seasoned the judgment of the district court may be, it cannot escape being a forecast rather than a determination."

Abstention in favor of state court adjudication is sound judicial administration where, as here, it can increase the assurance that all those affected by the statute in question, including the parties to this action, will be given the benefit of an authoritative and uniform rule of law applied alike to all businesses and grievants. *Cf. Kaiser Steel Corp. v. W. S. Ranch Co.*, 1968, 391 U.S. 593, 594, 88 S.Ct. 1753, 20 L.Ed.2d 835. It is well for federal courts to remember that in such a case as the present one a federal court can only try to ascertain state law, whereas the state has provided a unified method for the formation of policy and the determination of issues by the Commissioner of Consumer Protection and in the state courts. *Cf. Burford v. Sun Oil Co.*, 1943, 319 U.S. 315, 331, 333–334, 63 S.Ct. 1098, 87 L.Ed. 1424. See also *Chance v. Board of Examiners*, 2d Cir. 1977, 561 F.2d 1079, 1091–1092; *Reid v. Board of Education*, 2d Cir. 1971, 453 F.2d 238, 241–244.

In the unique situation of the present case abstention can be exercised through remand, assuring an adjudication of the state law issues in the pending action without risk of delay. That is the indicated course where, as here, the state law is uncertain and its resolution a matter of concern to the state.

■ A plain limit on abstention is the case in which, although all circumstances would normally point to abstention, the issue involved is one on which the state law is clear, and the risk of rendering a decision that would be disruptive of the even development. of state law can be excluded.

*Brown v. First National City Bank, supra,* 503 F.2d at 118. That is not the present case.

### III

The district court rested its decision on the ground that the plaintiff was not within the class meant by the legislature to be protected by the Unfair Trade Practices Act. That conclusion was far from clear, and it concealed a rather complex analysis of the plaintiff-appellant's interest to complain as well as an interpretation of the statute which materially affected its scope. The questions involved in the court below have no clear answers, quite apart from the uncertainty injected by the interpretation placed upon the Unfair Trade Practices Act by the *Mattatuck Bank* case. The Act as originally passed gave the right of suit under Section 42–110g only to persons who bought or leased goods or services from a seller or lessor primarily for personal, family or household purposes and thereby suffered an ascertainable loss of money or property as a result of an unfair trade practice. But the 1975 amendment radically changed the language of Section 42–110g by interpolating before the old language the provision giving a right of action to any person who suffers any ascertainable loss of money or property real or personal as a result of the use by a seller or lessor of an unfair trade practice. The *Mattatuck Bank* case, although not authoritative, must at least be taken to indicate that the Connecticut courts may take a broad view of the effect of the amendment and a view inconsistent with that adopted by the court below. The long roll of decisions coping with the interpretation of Section 10(b) of the Securities Exchange Act of 1934 and of Rule 10b–5 is a warning that identification of the members of the class intended to be benefited by an enactment is not always easy. *Cf. Superintendent of Insurance v. Bankers Life and Casualty Co.*, 1971, 404 U.S. 6, 92 S.Ct. 165, 30 L.Ed.2d 128; *Affiliated Ute Citizens v. United States*, 1972, 406 U.S. 128, 151–154, 92 S.Ct. 1456, 31 L.Ed.2d 741; *Blue Chip Stamps v. Manor*

*Drug Stores,* 1975, 421 U.S. 723, 95 S.Ct. 1917, 44 L.Ed.2d 539.

It is not intended by what has been said to suggest an interpretation of the Connecticut law, nor, indeed, to hold that the interpretation placed upon it by the Court below was in error. What is intended is to make clear that the issue of interpretation was not a simple one, and is of importance in determining the scope and application of the Connecticut Unfair Trade Practices Act, and that the matter of interpretation should have been left to the state courts.

Reversed, for further proceedings consistent with this decision.