629 F.2d 757
 Earl G. SMITH, Administrator of the Estate of Gary Dean
Smith, Deceased, Plaintiff-Appellant,
v.
METROPOLITAN PROPERTY AND LIABILITY INSURANCE COMPANY,
Defendant-Appellee.
 No. 1142, Docket 80-7131.
 United States Court of Appeals,
Second Circuit.
 Argued May 12, 1980.
Decided July 10, 1980.
 
 L. Douglas Shrader, Bridgeport, Conn. (Zeldes, Needle & Cooper, Frank J. Silvestri, Jr., Bridgeport, Conn., of counsel), for plaintiff-appellant.
 Snow Gene Munford, Hartford, Conn., of counsel, for defendant-appellee.
 Before LUMBARD, MANSFIELD and MULLIGAN, Circuit Judges.
 MULLIGAN, Circuit Judge:
 
 
 1
 The only question raised in this appeal is whether the district court properly abstained in a diversity action. The complaint requested a declaration of the validity under Connecticut law of an exclusionary clause in an automobile insurance policy. The United States District Court for the District of Connecticut, Ellen Bree Burns, Judge, approved and adopted a ruling of a United States Magistrate Arthur H. Latimer that abstention was appropriate under Louisiana Power & Light Co. v. City of Thibodaux, 360 U.S. 25, 79 S.Ct. 1070, 3 L.Ed.2d 1058 (1959), in that the suit presented "difficult questions of state law bearing on policy problems of substantial public import whose importance transcends the result in the case then at bar."[1] Colorado River Water Conservation District v. United States, 424 U.S. 800, 814, 96 S.Ct. 1236, 1244, 47 L.Ed.2d 483 (1976). We affirm.
 
 
 2
 The appellant, Earl G. Smith, is a citizen of Connecticut and the administrator of the estate of his son, Gary D. Smith, who was fatally injured when his motorcycle collided with an automobile operated by an uninsured motorist. Gary Smith was allegedly insured under a policy issued to his father by the appellee, Metropolitan Property and Liability Insurance Co. ("Metropolitan"), a Delaware corporation with its principal place of business outside Connecticut.
 
 
 3
 The appellant filed a claim on his son's behalf under the uninsured motorist provisions of the policy. Metropolitan rejected the claim on the ground that the motorcycle which Gary Smith was operating at the time of the accident, although owned by him, was not listed in the schedule of "insured highway vehicles" which formed part of the policy.[2] Metropolitan argued that coverage was therefore barred by an exclusionary clause providing in pertinent part that:
 
 This policy does not apply:
 
 4
 Under the Protection Against Uninsured Motorists Coverage
 
 
 5
 (e) to bodily injury to an insured while occupying a highway vehicle (other than an insured highway vehicle) owned by the named insured or by any relative resident in the same household as the named insured. . . . (emphasis added)
 
 
 6
 Upon rejection of his claim, the appellant commenced an action against Metropolitan in the District Court for the District of Connecticut. Jurisdiction was based on diversity of citizenship. The complaint sought a declaratory judgment that the exclusionary clause of the policy contravened Connecticut public policy and was therefore void.[3]
 
 
 7
 Both parties filed motions for summary judgment, which were referred to Magistrate Latimer, who denied the motions and ruled that abstention was appropriate. This ruling was approved and adopted in the opinion of Judge Burns.
 
 
 8
 * Although the jurisdiction which Congress has bestowed on the federal courts may at one time have been thought to be strictly mandatory, see, e. g., Cohens v. Virginia, 19 U.S. (6 Wheat.) 264, 404, 5 L.Ed. 257 (1821); Bacon v. Rutland Railroad Co., 232 U.S. 134, 137, 34 S.Ct. 283, 284, 58 L.Ed. 538 (1914); Prentis v. Atlantic Coast Line Co., 211 U.S. 210, 228, 29 S.Ct. 67, 70, 53 L.Ed. 150 (1908), it is now well established that we may refrain from deciding questions of state law otherwise within our jurisdiction, where the controversy falls within one of several categories thought to be inimical to harmonious federalism. See, e. g., Burford v. Sun Oil Co., 319 U.S. 315, 63 S.Ct. 1098, 87 L.Ed. 1424 (1943) (a state administrative apparatus would be disrupted); Louisiana Power & Light Co. v. City of Thibodaux, supra (where a difficult question of state law of substantial import is presented). See also Railroad Comm. of Texas v. Pullman Co., 312 U.S. 496, 61 S.Ct. 643, 85 L.Ed. 971 (1941) (where federal constitutional issues might be mooted by a determination of a difficult question of state law); see generally ALI, Study of the Division of Jurisdiction Between State and Federal Courts (1969).
 
 
 9
 In deciding to abstain under Thibodaux, the district court exercised "fair and well-considered discretion." Thibodaux, supra, 360 U.S. at 30, 79 S.Ct. at 1073; see also Lehman Bros. v. Schein, 416 U.S. 386, 390-91, 94 S.Ct. 1741, 1743-44, 40 L.Ed.2d 215 (1974) (use of state certification procedure is discretionary). In addition, a district court has discretion to withhold declaratory relief, such as is requested here, in order to avoid "needless obstruction of the domestic policies of the states." Great Lakes Dredge & Dock Co. v. Huffman, 319 U.S. 293, 298, 63 S.Ct. 1070, 1073, 87 L.Ed. 1407 (1943); Beacon Const. Co. v. Matco Elec. Co., 521 F.2d 392 (2d Cir. 1975). The propriety of the district court's decision to withhold such relief is further reinforced by the fact that appellant has recourse to arbitration. Paragraph 22 of the policy provides that disputes as to coverage or amount of payment shall be settled by arbitration upon written election of the insured. On the oral argument appellant indicated that the issue of damages would be submitted to arbitration. Given that both the extent of coverage and the amount of damages are arbitrable, the arbitration proceeding is a fully adequate alternative remedy which would be substantially duplicative of any proceeding in this court.
 
 
 10
 Although the availability of alternative remedies is not a bar to declaratory relief, Fed.R.Civ.P. 57, the district court may in its discretion refuse declaratory relief if the alternative remedy is more appropriate. Bituminous Coal Operators' Ass'n v. International Union, U.M.W., 585 F.2d 586, 594-95 (3d Cir. 1978); 6A J. Moore P 57.08(3) (2d ed. 1976). This is not a case in which declaratory relief is particularly appropriate. See, e. g., Luckenbach S.S. Co. v. United States, 312 F.2d 545, 548 (2d Cir. 1963) (seeking declaration of non-liability as to admiralty claim asserted by defendant but on which defendant had failed to bring suit); Mine Safety Appliance co. v. Energetics Science, Inc., 416 F.Supp. 530 (S.D.N.Y. 1976) (seeking declaration of invalidity of defendant's patent and concomitant non-infringement). See also Ungar v. Dunkin' Donuts, 68 F.R.D. 65, 145 (E.D. Pa. 1975), rev'd on other grounds, 531 F.2d 1211 (3d Cir.), cert. denied, 429 U.S. 823, 97 S.Ct. 74, 50 L.Ed.2d 84 (1976) (dictum) (purpose of declaratory judgment is to avoid multiplicity and circuity of actions). A unified arbitration of the entire dispute would not only conserve judicial resources but would also avoid potentially abrasive intrusion into an area of state sovereignty. See Necchi S.p.A. v. Necchi Sewing Machines Sales Corp., 348 F.2d 693, 696 (2d Cir. 1965), cert. denied, 383 U.S. 909, 86 S.Ct. 892, 15 L.Ed.2d 664 (1966) (because issues raised by plaintiff in his request for a declaratory judgment could also be determined in an arbitration proceeding, it was within the discretion of the district court to dismiss "the parallel and duplicative action seeking declaratory judgment."); accord, Aeronaves de Mexico, S.A. v. Triangle Aviation Services, Inc., 389 F.Supp. 1388 (S.D.N.Y. 1974).
 
 II
 
 11
 We turn now to a consideration of whether the conditions for Thibodaux abstention were satisfied here. Both the branches unclear state law and broad impact on state policy must be satisfied; neither is alone sufficient. Meredith v. Winter Haven, 320 U.S. 228, 236-38, 64 S.Ct. 7, 11-12, 88 L.Ed. 9 (1943); compare Thibodaux, supra, with County of Allegheny v. Frank Mashuda Co., 360 U.S. 185, 79 S.Ct. 1060, 3 L.Ed.2d 1163 (1959).
 
 
 12
 The district court was amply justified in concluding that the state law uncertainty as to the validity of the clause excluding coverage for uninsured vehicles was considerable. We need not be concerned here with weighting degrees of uncertainty, compare Wisconsin v. Constantineau, 400 U.S. 433, 91 S.Ct. 507, 27 L.Ed.2d 515 (1971) with Bellotti v. Baird, 428 U.S. 132, 147-48, 96 S.Ct. 2857, 2866, 49 L.Ed.2d 844 (1976); no edification whatever is available on this question, either from the Connecticut courts, see, e. g., Safeco Ins. Cos. v. Vetre, 174 Conn. 329, 387 A.2d 539 (1978); Rosnick v. Aetna Casualty & Surety Co., 172 Conn. 416, 374 A.2d 1076 (1977); Pecker v. Aetna Casualty & Surety Co., 171 Conn. 443, 370 A.2d 1006 (1976); Roy v. Centennial Insurance Co., 171 Conn. 463, 370 A.2d 1011 (1976); Citrano v. Berkshire Mut. Ins. Co., 171 Conn. 248, 368 A.2d 54 (1976); Weingarten v. Allstate Ins. Co., 169 Conn. 502, 363 A.2d 1055 (1975); Griffith v. Security Ins. Co. of Hartford, 167 Conn. 450, 356 A.2d 94 (1975), or from the language of the uninsured motorist statute and its associated regulations.[4] The courts of other states are in conflict. Compare Bankes v. State Farm Mut. Auto. Ins. Co., 216 Pa.Super. 162, 264 A.2d 197 (1970) and Beek v. Ohio Casualty Ins. Co., 135 N.J.Super. 1, 342 A.2d 547 (1975), aff'd, 73 N.J. 185, 373 A.2d 654 (1977) with Employers' Fire Ins. Co. v. Baker, 383 A.2d 1005 (R.I. 1978) and Rodriquez v. Maryland Indem. Ins. Co., 24 Ariz.App. 392, 539 P.2d 196 (1975). In other words, we have "no real idea" how the Connecticut courts would decide this question. First Nat'l Bank v. Reed, 306 F.2d 481, 487 (2d Cir. 1962).[5]
 
 
 13
 The second branch of Thibodaux is also satisfied here. In Colorado River, supra, 424 U.S. at 814, 96 S.Ct. at 1244, the court made it plain that Thibodaux abstention was not limited to the area of eminent domain law which happened to be involved in the earlier case. See also Kaiser Steel Corp. v. W. S. Ranch Co., 391 U.S. 593, 88 S.Ct. 1753, 20 L.Ed.2d 835 (1968) (water rights). This court has adopted a broad view of abstention. See, e. g., Naylor v. Case & McGrath, Inc., 585 F.2d 557 (2d Cir. 1978); Brown v. First Nat. City Bank, 503 F.2d 114 (2d Cir. 1974); Phillips, Nizer, Benjamin, Krim & Ballon v. Rosenstiel, 490 F.2d 509, 516 (2d Cir. 1973); First Nat'l Bank v. Reed, 306 F.2d 481, 487 (2d Cir. 1962); Beach v. Rome Trust Co., 269 F.2d 367 (2d Cir. 1959); see also Northeastern Tel. Co. v. American Tel. & Tel. Co., 477 F.Supp. 251 (D.Conn. 1978).
 
 
 14
 Connecticut, which is home to four of the ten leading carriers of property/casualty insurance,[6] surely has as strong an interest in the doctrinal integrity of its regulatory scheme as does Louisiana with respect to eminent domain, Thibodaux, supra, and New Mexico with respect to water, Kaiser Steel, supra. An erroneous decision as to the validity of the exclusionary clause at issue here a clause which appears to be in general use, 7 Appleman's Insurance Law § 4331 n.21 would risk a broad and unwarranted expansion or contraction of coverage going far beyond the private rights at issue here. This might in turn have a severe disruptive impact on the state regulatory apparatus as the Connecticut Supreme Court has itself emphasized: "judicial revision of the terms upon which such policies are issued may produce extensive repercussions throughout the insurance industry of the state." Roy v. Centennial Ins. Co., supra, 171 Conn. at 473, 370 A.2d at 1017.
 
 
 15
 The fact that the insurance industry is heavily regulated makes it all the more important that we stay our hand in favor of a definitive and uniform interpretation from the state courts. Abstention is particularly appropriate when dealing with a "complicated and comprehensive regulatory statute intended to strike a balance between differing local interests." Brown v. First National City Bank, supra at 118 (Mansfield, J.). See also Barry v. St. Paul Fire & Marine Ins. Co., 555 F.2d 3 (1st Cir. 1977), aff'd 438 U.S. 531, 98 S.Ct. 2923, 57 L.Ed.2d 932 (1978).[7]
 
 
 16
 Affirmed.
 
 MANSFIELD, Circuit Judge (dissenting):
 
 17
 I respectfully dissent. When Congress chooses to abolish diversity jurisdiction, as I hope it will, the federal courts will be spared the burdensome task of divining state law in cases like this one. Until Congress does so, however, it is our obligation to decide these matters. Although I deeply deplore the burden placed upon us by the no-longer-warranted or necessary imposition of diversity jurisdiction upon federal courts, see also Tobin v. Slutsky, 506 F.2d 1097 (2d Cir. 1974); Modave v. Long Island Jewish Medical Center, 501 F.2d 1065, 1067 & n. 2 (2d Cir. 1974); Phillips, Nizer, Benjamin, Krim & Ballon v. Rosenstiel, 490 F.2d 509, 515-16 (2d Cir. 1973), I see no justification for chipping away at such jurisdiction through unwarranted expansion of the doctrine of abstention.
 
 
 18
 The majority takes the position that "(t)his court has adopted a broad view of abstention." The Supreme Court, however, has emphatically taken a narrow view. See Colorado River Water Conservation District v. United States, 424 U.S. 800, 813, 96 S.Ct. 1236, 1244, 47 L.Ed.2d 483 (1976) ("exception, not the rule");[1] Harris County Commissioners Court v. Moore, 420 U.S. 77, 83, 95 S.Ct. 870, 874, 43 L.Ed.2d 32 (1975) ("special circumstances"); County of Allegheny v. Frank Mashuda Co., 360 U.S. 185, 188-89, 79 S.Ct. 1060, 1062-1063, 3 L.Ed.2d 1163 (1959) ("extraordinary and narrow exception"); Meredith v. Winter Haven, 320 U.S. 228, 234-35, 64 S.Ct. 7, 10-11, 88 L.Ed. 9 (1943) ("exceptional circumstances"). This is so because the jurisdiction conferred upon us by Congress is mandatory, not discretionary.
 
 
 19
 Abstention is appropriate in those rare cases in which the exercise of federal jurisdiction would be significantly disruptive of state efforts to deal with problems of great public import. Colorado River, supra, 424 U.S. at 814, 96 S.Ct. at 1244. In a diversity case, abstention is somewhat of an anomaly. Federal court action will seldom endanger state interests more than would state court action, because "a federal court adjudicating a State-created right solely because of diversity of citizenship of the parties is . . . only another court of the State." Guaranty Trust Co. v. York, 326 U.S. 99, 108, 65 S.Ct. 1464, 1469, 89 L.Ed. 2079 (1945); Erie R.R. v. Tompkins, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938).
 
 
 20
 I differ with the majority as to whether this case qualifies as one "of substantial public import whose importance transcends the result in the case at bar." Colorado River, supra, 424 U.S. at 814, 96 S.Ct. at 1244. The question of state law is undoubtedly difficult. But the issues are not important enough to warrant abstention.
 
 
 21
 In Colorado River the Supreme Court proffered five examples of cases where abstention would be warranted on the ground that they presented difficult state policy problems transcending the result in the immediate litigation. Each of them was far removed from the present case. In Louisiana Power & Light Co. v. City of Thibodaux, 360 U.S. 25, 79 S.Ct. 1070, 3 L.Ed.2d 1058 (1959), the issue was the eminent domain power of a city under state law, a matter "intimately involved with the sovereign prerogative." In Alabama Public Service Comm. v. Southern R. Co., 341 U.S. 341, 71 S.Ct. 762, 95 L.Ed. 1002 (1951), and Hawks v. Hamill, 288 U.S. 52, 53 S.Ct. 240, 77 L.Ed. 610 (1933), the suits sought to enjoin state officials from executing domestic policies. Burford v. Sun Oil Co., 319 U.S. 315, 63 S.Ct. 1098, 87 L.Ed. 1424 (1943), involved a challenge to the order of a state regulatory authority, circumventing a "unified" state review procedure. Kaiser Steel Corp. v. W.S. Ranch Co., 391 U.S. 593, 88 S.Ct. 1753, 20 L.Ed.2d 835 (1968), the only one of these cases between two private parties, in fact tests the system of state grants of water rights, an issue "of vital concern in the arid State of New Mexico."
 
 
 22
 A federal court may not abstain because of difficulty in determining applicable state law or because of the risk that it might err in predicting state law. See McNeese v. Board of Education, 373 U.S. 668, 673 n. 5, 83 S.Ct. 1433, 1436, 10 L.Ed.2d 622 (1963); Louisiana Power & Light Co. v. Thibodaux, 360 U.S. 25, 27, 79 S.Ct. 1070, 1072, 3 L.Ed.2d 1058 (1958); Meredith v. Winter Haven, 320 U.S. 228, 236, 64 S.Ct. 7, 11, 88 L.Ed. 9 (1943); Baltimore Bank for Cooperatives v. Farmers Cheese Cooperative, 583 F.2d 104, 111 (3d Cir. 1978); Middle Atlantic Utilities Co. v. S.M.W. Development Corp., 392 F.2d 380, 386 (2d Cir. 1968); Royal School Labs, Inc. v. Town of Watertown, 358 F.2d 813, 816 (2d Cir. 1966); Miller-Davis Co. v. Illinois State Toll Highway Auth., 567 F.2d 323, 326 (7th Cir. 1977); Julander v. Ford Motor Co., 488 F.2d 839, 844 (10th Cir. 1973); Wohl v. Keene, 476 F.2d 171, 174 (4th Cir. 1973); Martin v. State Farm Mutual Auto. Ins. Co., 375 F.2d 720, 722 (4th Cir. 1967); Tomiyasu v. Golden, 358 F.2d 651, 654 (9th Cir. 1966); In re Mohammed, 327 F.2d 616, 617 (6th Cir. 1964); Penagaricano v. Allen Corp., 267 F.2d 550, 556 (1st Cir. 1959); but see United Services Life Ins. Co. v. Delaney, 328 F.2d 483 (5th Cir.) (en banc), cert. denied, 377 U.S. 935, 84 S.Ct. 1335, 12 L.Ed.2d 298 (1964); 1A (Part 2) Moore's Federal Practice Par. 0.203(3), at 2135 (1979); 17 Wright, Miller & Cooper, Federal Practice & Procedure § 4246, at 492-500 (1978); American Law Institute, Study of the Division of Jurisdiction Between State and Federal Courts § 1371(f), at 50 (1969); Currie, The Federal Courts and the American Law Institute, 36 U.Chi.L.Rev. 268, 313-14 (1969); Comment, Abstention Under Delaney: A Current Appraisal, 49 Tex.L.Rev. 247 (1971); Comment, Recent Developments in the Doctrine of Abstention, 1965 Duke L.J. 102; Note, Abstention and Certification in Diversity Suits: "Perfection of Means and Confusion of Goals," 73 Yale L.J. 850 (1964). See generally P. Bator, P. Michkin, D. Shapiro & H. Wechsler, Hart & Wechsler's The Federal Courts and The Federal System 998-1005 (1973); Field, Abstention in Constitutional Cases: The Scope of the Pullman Abstention Doctrine, 122 U.Penn.L.Rev. 1071, 1148-53 & n. 212 (1974); Field, The Abstention Doctrine Today, 125 U.Penn.L.Rev. 590, 608 & n. 67 (1977).
 
 
 23
 The risk to "the doctrinal integrity of (Connecticut's) regulatory scheme" posited by the majority is speculative and without foundation in the record. A federal court sitting in effect as a state court will be able to discern such "doctrinal integrity" as there may be in Connecticut's pertinent laws and cases, and rule consistently. Indeed, the majority's persuasive recognition of the utter absence of state authority undercuts the argument that there is a doctrine whose integrity would be jeopardized. While the insurance industry is regulated, the regulators have never purported to pass on whether a clause of the type challenged here is consistent with their scheme (thus distinguishing this case from one like Burford, where the federal court was asked to overrule the regulators), nor will they have the opportunity to do so if we abstain. This is a case for the courts, not for a regulatory agency. No regulatory proceeding is being circumvented. I therefore find nothing in the record to support the majority's assertion that a decision on the merits could have a "severe disruptive impact on the state regulatory apparatus."
 
 
 24
 Nor would a federal decision on the merits have an adverse impact on Connecticut policy or decisional law. Should we decide the issues contrary to the views that might some day be taken by the Connecticut Supreme Court in some other case that has not yet been instituted, only the immediate parties in this suit would be bound by our decision, and then only with respect to the specific claim in issue. Other insurers can (1) seek a declaratory judgment in state court to correct us, (2) ignore our holding and wait for future cases to arise in state court, or (3) accede to our interpretation of their own choice, drop the clause, and seek to adjust premiums appropriately. There will be no devastation of the industry or disruption of the regulatory scheme. Thus, unlike the cases in which the Supreme Court has sanctioned abstention, no harm will have been done except to the private parties to this particular lawsuit. The interest of protecting them from an erroneous ruling on state law is not enough to justify abstention. Colorado River, supra; McNeese v. Board of Education, 373 U.S. 668, 673 n. 5, 83 S.Ct. 1433, 1436, 10 L.Ed.2d 622 (1963); 1A (Part 2) Moore's Federal Practice Par. 0.203(3), at 2135 (1979); 17 Wright, Miller & Cooper, Federal Practice & Procedure § 4246, at 492-500 (1978); American Law Institute, Study of the Division of Jurisdiction Between State and Federal Courts § 1371(f), at 50 (1969).[2]
 
 
 25
 The fact that this is a suit for declaratory relief does not affect the propriety of abstention. Lake Carriers' Ass'n v. MacMullan, 406 U.S. 498, 509 n. 13, 92 S.Ct. 1749, 1756, 32 L.Ed.2d 257 (1972). Nor is this the type of case in which declaratory relief should be denied. Such relief will fully settle the controversy, see Maryland Casualty Co. v. Rosen, 445 F.2d 1012, 1014 (2d Cir. 1971); 6A Moore's Federal Practice Par. 57.08(4) (1979), there is no pending state court proceeding, see Brillhart v. Excess Ins. Co., 316 U.S. 491, 495, 62 S.Ct. 1173, 1175, 86 L.Ed. 1620 (1942); Beacon Construction Co. v. Matco Electric Co., 521 F.2d 392, 398-99 (2d Cir. 1975), and, for the reasons discussed above, federal-state comity would not be jeopardized. The discretionary nature of declaratory relief may not be used to avoid our mandatory diversity jurisdiction.
 
 
 26
 Finally, the existence of an arbitration procedure is of no significance in this case. There is no indication that an arbitrator could, would, or should look beyond the express and unambiguous terms of the insurance agreement. Relegating the parties to arbitration would merely delay the occasion on which they would come to our door for resolution of the legal issue.
 
 
 27
 "Questions may occur, which we would gladly avoid; but we cannot avoid them. All we can do is, to exercise our best judgment, and conscientiously to perform our duty." Cohens v. Virginia, 19 U.S. (6 Wheat.) 264, 403, 5 L.Ed. 257 (1821) (Marshall, C. J.). I would reverse and remand the case for a determination on the merits.
 
 
 
 [1]
 The complaint was originally in two counts. The first count was a request for a declaratory judgment. The second count was an action to recover money damages for Basic Reparations Benefits and fees. The second count was deleted by consent of the parties
 
 
 [2]
 The policy definitions provided in part that:
 " 'insured highway vehicle' means a highway vehicle (a) described in the schedule as an insured highway vehicle to which the bodily injury liability coverage of the policy applies. . . ."
 
 
 [3]
 Connecticut law provides that every automobile insurance policy shall include uninsured motorist coverage:
 "for the protection of persons insured thereunder who are legally entitled to recover damages from owners or operators of uninsured motor vehicles . . . ."
 
 
 [38]
 Conn. Gen. Stat. Ann. § 175c
 The first count of the complaint also alleged that motorcycles were not "highway vehicles" within the meaning of the policy and that therefore the exclusionary clause did not apply.
 
 
 [4]
 See n.3 supra and Regs. Conn. State Agencies § 38-175a-6
 
 
 [5]
 That Connecticut courts have tended to construe the uninsured motorist statute narrowly, Simonette v. Great American Ins. Co., 165 Conn. 466, 470, 338 A.2d 453 (1973), even if true, is not sufficient guidance
 
 
 [6]
 Best's Review June 1980, at 10 et seq. (measured in volume of premiums)
 
 
 [7]
 We note also that it is the out-of-state litigant who asks us to abstain. Diversity jurisdiction exists to protect out-of-state litigants from state court bias. Guaranty Trust Co. v. York, 326 U.S. 99, 111, 65 S.Ct. 1464, 1470, 89 L.Ed. 2079 (1945); Pease v. Peck, 59 U.S. (18 How.) 595, 599, 15 L.Ed. 518 (1856). Diversity jurisdiction is of course available to in-state litigants as well as nonresidents. But any prejudice against the appellee here can be "given effect in state courts only at the cost of a possibly incorrect decision that could have significant adverse effect upon state citizens as well as the particular outsider . . . ." McGautha v. California, 402 U.S. 183, 261 n.11, 91 S.Ct. 1454, 1494, 28 L.Ed.2d 711 (1971) (Brennan, J., dissenting)
 
 
 [1]
 The Court quoted with approval an earlier statement by Justice Frankfurter in Alabama Pub. Service Comm'n v. Southern R. Co., 341 U.S. 341, 361-362, 71 S.Ct. 762, 774, 95 L.Ed. 1002 (1951):
 " '(I)t was never a doctrine of equity that a federal court should exercise its judicial discretion to dismiss a suit merely because a State court could entertain it.' " Colorado River Water Con. Dist. v. United States, 424 U.S. at 813-14, 96 S.Ct. at 1244.
 
 
 [2]
 Our earlier decisions characterized by the majority as adopting "a broad view of abstention" are distinguishable. All but Naylor v. Case & McGrath, Inc., 585 F.2d 557 (2d Cir. 1978), pre-dated the more recent strict view emphasized by the Supreme Court in Colorado River and Harris County Commissioners, by which we are bound. In Naylor, in which only one judge of this Court participated, the court noted that the case presented a "unique situation" and that the questions "bear importantly on the formation of enforcement policy around the relatively new and recently amended Unfair Trade Practices Act of the State, an important consumer protection statute."